In re the Commitment of Tory L. Rachel:

State of Wisconsin, Petitioner-Respondent,

v.

Tory L. Rachel, Respondent-Appellant.

Supreme Court

*No. 00–0467. Oral argument March 6, 2002.—Decided July 1, 2002.*

2002 WI 81

(Also reported in 647 N.W.2d 762.)

216

217

For the respondent-appellant there were briefs by *Richard H. Hart* and *Hart Law Offices,* Milwaukee, and oral argument by *Richard H. Hart.*

For the petitioner-respondent the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. JON P. WILCOX, J. This case involves a constitutional challenge to Wis. Stat. ch. 980 (1999–2000), the state's sexually violent person commitment law. The challenge is brought by respondent Tory L. Rachel, who was involuntarily committed to institutional care under ch. 980. Between the time that the State's petition for commitment was filed and the beginning of Rachel's trial, the legislature passed several amendments to ch. 980, which primarily served to limit a ch. 980 respondent's ability to seek supervised release. Rachel alleges that these amendments render ch. 980 unconstitutional on its face.

¶ 2. Prior to trial, Rachel filed a motion to dismiss, claiming that ch. 980, as amended, violates the double jeopardy, due process, and ex post facto provisions of the Wisconsin and United States Constitutions. The Kenosha County Circuit Court, Wilbur W. Warren, III, Judge, denied the motion and held that ch. 980 was constitutional as amended. After a trial, the circuit court found Rachel to be a sexually violent person under ch. 980 and ordered him committed to institutional care. Rachel appealed, and the court of appeals certified the case to this court. We accepted the certification, and we now uphold the decision of the circuit court.

## I. BACKGROUND

### A

¶ 3. On August 9, 1994, the Kenosha County District Attorney filed a petition with the circuit court

seeking the involuntary commitment of Tory L. Rachel. Pursuant to Wis. Stat. § 980.02(2)(ag) (1993–94), when the petition was filed, Rachel was within 90 days of his release on a prison sentence for second-degree sexual assault and false imprisonment. The Kenosha County Circuit Court held a probable cause hearing, found probable cause to believe that Rachel was a sexually violent person, and bound him over for trial.

¶ 4. Chapter 980 had just taken effect on June 2, 1994—about two months prior to the filing of the petition. *See* 1993 Wis. Act 479, § 40. Unsurprisingly, Rachel challenged the new statute on a number of constitutional grounds, including that the statute was an ex post facto law; that it constituted double jeopardy; that it violated procedural and substantive due process; that it violated equal protection; that it was overly vague; and that it constituted cruel and unusual punishment. The circuit court denied Rachel's motions to dismiss, and the court of appeals granted Rachel leave to appeal the nonfinal order.

¶ 5. The court of appeals held Rachel's appeal in abeyance until December 8, 1995, when this court decided *State v. Post,* 197 Wis. 2d 279, 541 N.W.2d 115 (1995), and *State v. Carpenter,* 197 Wis. 2d 252, 541 N.W.2d 105 (1995), which together comprised the first constitutional assessment of ch. 980 made by this court. In *Post,* we held that ch. 980 did not violate the Due Process or Equal Protection Clauses of the state or federal constitution. *Post,* 197 Wis. 2d at 316–17, 330–31. Similarly, in *Carpenter,* we held that ch. 980 did not violate the state or federal Double Jeopardy or Ex Post Facto Clauses. *Carpenter,* 197 Wis. 2d at 271–72, 274. As a result of our decisions in *Post* and *Carptenter,* on January 11, 1996, the court of appeals summarily

upheld the circuit court's decision in Rachel's case and remanded the case to the circuit court for further proceedings.

¶ 6. Over the next several years, Rachel's case underwent a number of procedural delays, including two changes of counsel for Rachel and several adjourn-ments, including one to await the U.S. Supreme Court's decision in *Kansas v. Hendricks,* 521 U.S. 346 (1997), where the Court held that Kansas's sexually violent person law was nonpunitive, and therefore did not violate the Double Jeopardy or Ex Post Facto Clauses of the U.S. Constitution. Additionally, Rachel was denied interlocutory appeal on a timeliness issue (eventually deemed waived), and was granted interlocutory appeal on a discovery issue. *See State v. Rachel,* 224 Wis. 2d 571, 591 Wis. 2d 920 (Ct. App. 1999). After remittitur from that appeal, the matter was scheduled for a jury trial on November 8, 1999.

¶ 7. On the day that the trial was supposed to commence, Rachel filed a motion to dismiss on the grounds that several amendments to the statute, enacted just two weeks prior, rendered ch. 980 unconstitutional. *See* 1999 Wis. Act 9, §§ 3216d-3239d (published Oct. 28, 1999). The primary thrust of these amendments was to limit a ch. 980 respondent's ability to seek supervised release as an alternative to institutional commitment under ch. 980. We now examine these amendments in some detail.

### B

¶ 8. In Wisconsin Act 9 of 1999 ("the Act"), sections 3216d through 3239d, the legislature made a number of amendments to Wisconsin's sexually violent person law, ch. 980 of the Wisconsin Statutes. The most

notable of these were made to Wis. Stat. § 980.06, the statutory section dealing with the physical commitment of sexually violent persons. Under the prior statutes, § 980.06(1) (1997–98) stated:

> If a court or jury determines that the person who is the
> . subject of a petition under s. 980.02 is a sexually violent
> person, the court shall order the person to be committed to the custody of the department [of Health and Family Services] for control, care and treatment until such time as the person is no longer a sexually violent person.

The Act amended this section to include the requirement that "A commitment order under this section *shall* specify that the person be placed in institutional care." *See* 1999 Wis. Act 9, § 3223h (emphasis added). Accordingly, § 980.06(2)(a)-(c) (1997–98) was repealed. *See* 1999 Wis. Act 9, § 3223i-3223k. Those sections had laid out the procedure by which the court could enter an initial order for a sexually violent person to be committed to supervised release, rather than institutional care, and described the methods for developing a supervised release plan.

¶ 9. Additionally, Wis. Stat. § 980.065(1m) (1997–98), which dealt with institutional care for sexually violent persons, was changed from:

> The department may place a person committed to institutional care under s. 980.06(2)(b) at a mental health unit or facility, including a secure mental health unit or facility at the Wisconsin resource center established under s. 46.056 or a secure mental health unit or facility provided by the department of corrections under sub. (2).

to read:

The department shall place a person committed under s. 980.06 at the secure mental health facility established under s. 46.055, the Wisconsin resource center established under s. 46.056 or a secure mental health unit or facility provided by the department of corrections under sub. (2).

Wis. Stat. § 980.065(1m) (1999–2000); 1999 Wis. Act 9, § 3230m.

¶ 10. Section 980.06(d) (1997–98), which discussed the conditions, violation, and revocation of supervised release, was moved from under Wis. Stat. § 980.06 (1997–98) to Wis. Stat. § 980.08(6m) (1999–2000), the section detailing petitions for supervised release. That section was also amended to include the language:

The department shall arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person and in accordance with the plan for supervised release approved by the court under sub. (5).

1999 Wis. Act 9, § 3223L.

¶ 11. Wisconsin Stat. § 980.07(1) (1997–98), covering periodic reexaminations of sexually violent persons, originally read, in pertinent part:

If a person has been committed under s. 980.06 and has not been discharged under s. 980.09, the department shall conduct an examination of his or her mental condition within 6 months after an initial commitment under s. 980.06 and again thereafter at least once each 12 months for the purpose of determining whether the person has made sufficient progress to be entitled to transfer to a less restrictive facility, to supervised release or to discharge.

The language "whether the person has made sufficient

progress to be entitled to transfer to a less restrictive facility, to supervised release or to discharge" was changed to "whether the person has made sufficient progress for the court to consider whether the person should be placed on supervised release or discharged." *See* Wis. Stat. § 980.07(1) (1999–2000); 1999 Wis. Act 9, § 3232.

¶ 12. Finally, Wis. Stat. § 980.08(1) (1997–98), which allowed a sexually violent person who was under institutional care to petition the committing court for supervised release after six months of institutional placement, was changed to extend the minimum time to 18 months before the individual committed under ch. 980 could petition for supervised release. *See* 1999 Wis. Act 9, § 3232p. This subsection continues to allow the director of the institution to petition on the individual's behalf at any time.

¶ 13. A number of smaller changes to the statutory language were also made throughout the chapter to give effect to these amendments. The other sections that related to petitions for supervised release and discharge, Wis. Stat. §§ 980.09 and 980.10, remained fundamentally unchanged.[1]

---

[1] Those sections state, in relevant part:

980.09 Petition for discharge; procedure.

(1) PETITION WITH SECRETARY'S APPROVAL. (a) If the secretary determines at any time that a person committed under this chapter is no longer a sexually violent person, the secretary shall authorize the person to petition the committing court for discharge. . . .

. . . .

(b) At a hearing under this subsection . . . [t]he state has the burden of proving by clear and convincing evidence that the petitioner is still a sexually violent person.

¶ 14. As a whole, the consequence of these amendments was to limit the ch. 980 respondent's ability to obtain supervised release when the respondent is found

> (c) If the court is satisfied that the state has not met its burden of proof under par. (b), the petitioner shall be discharged from the custody or supervision of the department. If the court is satisfied that the state has met its burden of proof under par. (b), the court may proceed to determine, using the criterion specified in s. 980.08 (4), whether to modify the petitioner's existing commitment order by authorizing supervised release.

(2) PETITION WITHOUT SECRETARY'S APPROVAL. (a) A person may petition the committing court for discharge from custody or supervision without the secretary's approval. At the time of an examination under s. 980.07 (1), the secretary shall provide the committed person with a written notice of the person's right to petition the court for discharge over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall forward the notice and waiver form to the court with the report of the department's examination under s. 980.07. If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person. . . .

. . . .

> (b) If the court determines at the probable cause hearing under par. (a) that probable cause exists to believe that the committed person is no longer a sexually violent person, then the court shall set a hearing on the issue. . . . At the hearing, the state has the burden of proving by clear and convincing evidence that the committed person is still a sexually violent person.

> (c) If the court is satisfied that the state has not met its burden of proof under par. (b), the person shall be discharged from the custody or supervision of the department. If the court is satisfied that the state has met its burden of proof under par. (b), the court may proceed to determine, using the criterion specified in s. 980.08 (4), whether to modify the person's existing commitment order by authorizing supervised release.

225

to be a sexually violent person. Under the old statutory scheme, the circuit court could order commitment to supervised release immediately after trial under Wis. Stat. § 980.06(2) (1997–98), and the individual could petition for supervised release after six months of institutional placement under Wis. Stat. § 980.08(1) (1997–98). Under the new formulation, the circuit court no longer has the option to order commitment directly to supervised release after trial, Wis. Stat. § 980.06 (1999–2000); and the individual can only petition for supervised release after 18 months of institutional placement under Wis. Stat. § 980.08(1) (1999–2000).

¶ 15. Under both the old and the new schemes, however, the director of the institution at which the individual is placed may still petition on the individual's behalf for supervised release at any time under Wis. Stat. § 980.08(1); and the court can still order a reexamination at any time under Wis. Stat. § 980.07(3). Additionally, under both schemes, the individual can

---

980.10 Additional discharge petitions.

In addition to the procedures under s. 980.09, a committed person may petition the committing court for discharge at any time, but if a person has previously filed a petition for discharge without the secretary's approval and the court determined, either upon review of the petition or following a hearing, that the person's petition was frivolous or that the person was still a sexually violent person, then the court shall deny any subsequent petition under this section without a hearing unless the petition contains facts upon which a court could find that the condition of the person had so changed that a hearing was warranted. If the court finds that a hearing is warranted, the court shall set a probable cause hearing in accordance with s. 980.09 (2) (a) and continue proceedings under s. 980.09 (2) (b), if appropriate. If the person has not previously filed a petition for discharge without the secretary's approval, the court shall set a probable cause hearing in accordance with s. 980.09 (2) (a) and continue proceedings under s. 980.09 (2) (b), if appropriate.

petition for discharge under Wis. Stat. §§ 980.09(2) and 980.10; and the Wisconsin secretary of health and family services ("the Secretary") may authorize the person to petition for discharge at any time under Wis. Stat. § 980.09(1).[2] Under both the old and new schemes, the individual is entitled to a periodic reexamination no later than six months after commitment, under Wis. Stat. § 980.07(1), and is entitled to subsequent periodic reexaminations at least once each 12 months thereafter.

## C

¶ 16. In his motion to dismiss, Rachel claimed that these amendments render ch. 980 an ex post facto law, violate his right against double jeopardy, and violate his right to due process. The circuit court denied Rachel's motion and held that ch. 980 remained constitutional, despite the amendments. Rachel proceeded to a bench trial. On November 12, 1999, the circuit court held that Rachel was a sexually violent person under ch. 980, and ordered him committed to the custody, care, and treatment of the Department of Health and Family Services.

¶ 17. Rachel appealed his commitment. The court of appeals, recognizing the nature and scope of these issues, certified the appeal to this court. We accepted the certification, and we now affirm the holding of the circuit court.

---

[2] Each of these may result in a modified commitment order authorizing supervised release rather than complete discharge from supervision. Wis. Stat. §§ 980.09(1)(c), (2)(c) (1999–2000).

## II. DOUBLE JEOPARDY AND EX POST FACTO CLAUSES

### A

¶ 18. We begin our discussion with an analysis of the double jeopardy and ex post facto challenges. When analyzing a claim under either the Ex Post Facto or the Double Jeopardy Clauses, the threshold question is whether the challenged action, in this case ch. 980, is a criminal or civil action. *Hendricks,* 521 U.S. at 369. Here, we hold that the amended statute is not criminal or punitive in nature, and that, consequently, a commitment under ch. 980 does not violate either the Double Jeopardy or the Ex Post Facto Clauses.

¶ 19. The Fifth Amendment of the U.S. Constitution states, in part, "No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ." Similarly, Article I, Section 8, Paragraph 1 of the Wisconsin Constitution states, in part, "[N]o person for the same offense may be put twice in jeopardy of punishment . . . ." Because the provisions of the state and federal constitutions are the same in scope and purpose, we have routinely followed decisions of the U.S. Supreme Court as governing the double jeopardy provisions of both constitutions. *Carpenter,* 197 Wis. 2d at 263; *State v. Killebrew,* 115 Wis. 2d 243, 246 n.2, 340 N.W.2d 470 (1983).

¶ 20. The Double Jeopardy Clauses protect a person against three types of action: (1) subsequent prosecution for the same offense after acquittal; (2) subsequent prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.

228

*State v. Canon,* 2001 WI 11, ¶ 8, 241 Wis. 2d 164, 622 N.W.2d 270 (citing *Green v. United States,* 355 U.S. 184, 187–88 (1957); *State v. Vassos,* 218 Wis. 2d 330, 341, 579 N.W.2d 35 (1998)). In each of these scenarios, it has been our long-standing interpretation, as well as that of the U.S. Supreme Court, that the Double Jeopardy Clause protects against subsequent *criminal* prosecutions. *United States v. Halper,* 490 U.S. 435, 440 (1989); *State v. Kramsvogel,* 124 Wis. 2d 101, 109, 369 N.W.2d 145 (1985). Consequently, if we conclude that one of the actions in question is civil and does not impose a criminal punishment, our double jeopardy analysis ends there. *State v. Thierfelder,* 174 Wis. 2d 213, 219, 495 N.W.2d 669 (1993).

¶ 21. Similar reasoning applies to our ex post facto analysis. Article I, Section 9 of the U.S. Constitution states, "No bill of attainder or ex post facto law shall be passed." Article I, Section 12 of the Wisconsin Constitution states, "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed . . . ." Again, because of their similarity in wording and scope, we have looked to interpretations of the federal Ex Post Facto Clause when interpreting the Ex Post Facto Clause of the Wisconsin Constitution. *Carpenter,* 197 Wis. 2d at 272; *State v. Thiel,* 188 Wis. 2d 695, 699, 524 N.W.2d 641 (1994).

¶ 22. It is well established that the Ex Post Facto Clauses of both the U.S. and Wisconsin Constitutions prohibit the state from enacting any law that imposes punishment for acts that were not punishable at the time they were committed. *Collins v. Youngblood,* 497 U.S. 37, 41 (1990); *State v. Hobson,* 218 Wis. 2d 350, 381, 577 N.W.2d 825 (1998). Thus, as with the Double Jeopardy Clause, to violate the Ex Post Facto Clause, a

statute must be criminal rather than civil in nature. *Carpenter,* 197 Wis. 2d at 272–73; *Wis. Bingo Supply & Equip. Co. v. Bingo Control Bd.,* 88 Wis. 2d 293, 304–05, 276 N.W.2d 716 (1979). Our threshold question then, for both the ex post facto and double jeopardy challenges, is whether ch. 980, as amended, is a nonpunitive· civil statute or a punitive criminal statute.

██

¶ 23. We analyze this question in two steps. Because of changes in the U.S. Supreme Court's double jeopardy jurisprudence since our holding in *Carpenter,* we focus the first part of our analysis on clarifying the standard by which this court determines whether or not a statute is punitive. Second, we apply that standard to the amended ch. 980. Each of these questions involves questions of statutory construction and constitutional interpretation which this court reviews de novo. *Reginald D. v. State,* 193 Wis. 2d 299, 305–06, 533 N.W.2d 181 (1995).

B

¶ 24. We begin by addressing the proper standard for determining whether or not a statute is punitive. This analysis is necessary because of a series of cases decided by this court and the U.S. Supreme Court since this court first addressed the constitutionality of ch. 980 in *Carpenter.*

¶ 25. We begin our analysis by looking at the U.S. Supreme Court's 1989 decision in *United States v. Halper,* 490 U.S. 435. In *Halper,* the defendant was a laboratory manager who was prosecuted by the federal government for multiple violations of the criminal false claims statute, 18 U.S.C. § 287 (1982). *Id.* at 437. After Halper was convicted, the government then brought an

action under the civil False Claims Act, 31 U.S.C. §§ 3729–3731 (1982), in which Halper was found liable. *Halper,* 490 U.S. at 438. Halper challenged the civil action, claiming that it violated the Double Jeopardy Clause. *Id.*

¶ 26. The Court examined the civil sanction to determine whether it violated double jeopardy. In making its determination, the Court attempted to determine whether the civil sanction served "the twin aims of retribution and deterrence" necessary for a statute to be punitive. *Id.* at 448. The court stated, "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* A unanimous Court subsequently held that the defendant's liability under the Civil False Claims Act was "sufficiently disproportionate" to the actual damages incurred by the government to constitute a second punishment, and thus violated the Double Jeopardy Clause.[3] *Id.* at 452.

¶ 27. *Halper* was a significant departure from past double jeopardy cases, and not long after it was decided, members of the Court began to voice doubts about the holding. In *Department of Revenue v. Kurth Ranch,* 511 U.S. 767 (1994), the Court was asked whether Montana's tax for the storage and possession of marijuana, which was imposed in addition to other criminal drug prosecutions, violated double jeopardy. *Id.* at 769. The Court held that the high tax rate, the deterrent purpose, the fact that the tax was conditioned

---

[3] As a result, the U.S. Supreme Court remanded the case to the District Court to allow the government the opportunity to demonstrate that the court's assessment of its injuries was erroneous. *United States v. Halper,* 490 U.S. 435, 452 (1989).

on the commission of a crime, and the fact that the tax was exacted only after the taxpayer has been arrested for the conduct that gave rise to the tax obligation, taken together, rendered the tax a "punishment" and therefore violated double jeopardy. *Id.* at 783–84. The Court downplayed *Halper,* however, noting that *Halper* explicitly applied to civil penalties, and not to taxes like the one at issue in the present case. *Id.* at 778, 784.

¶ 28. In dissent, Justice Scalia, joined by Justice Thomas, sharply questioned the *Halper* decision, to the point of advocating its abandonment. *Id.* at 804–05 (Scalia, J., dissenting). Scalia criticized the majority for implicitly holding that any proceeding that imposes "punishment" is a criminal prosecution—a conclusion that departed from the Court's traditional double jeopardy jurisprudence, and even, to an extent, from the *Halper* decision itself. *Id.* at 805–06 (Scalia, J., dissenting). Scalia thought that the Court's traditional test to determine if a statute is punitive—laid out in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144 (1963), and *United States v. Ward,* 448 U.S. 242 (1980)—was more appropriate to determine whether the drug tax statutes constituted a second criminal prosecution. *Id.*

¶ 29. The Chief Justice, in a separate dissent, also noted that the *Halper* reasoning had no place in analyzing a tax statute. *Kurth Ranch,* 511 U.S. at 786–87 (Rehnquist, C.J., dissenting). Only Justice O'Connor seemed to be willing to fully apply *Halper* in this case. *Id.* at 798 (O'Connor, J., dissenting).

¶ 30. Over the next several years, the Court continued to back away from its *Halper* holding. In *United States v. Ursery,* 518 U.S. 267 (1996), the Court recognized the narrowness of the *Halper* rule, found it inapplicable to a double jeopardy challenge of a "civil forfeiture," as opposed to a "civil penalty," and instead

applied the *Mendoza-Martinez* factors. *Id.* at 283. In *Kansas v. Hendricks*—a holding of particular relevance to our present case—the majority opinion did not even cite *Halper* in deciding that Kansas's sexually violent person law did not violate the constitutional protection against double jeopardy. Instead, the Court once again applied many of the *Mendoza-Martinez* factors. *Hendricks,* 521 U.S. at 361–64.

¶ 31. In 1997, the Court finally abrogated the *Halper* rule explicitly. In *Hudson v. United States,* 522 U.S. 93 (1997), the Court redefined the basis for a double jeopardy challenge, and criticized the *Halper* test for spawning "a wide variety of novel double jeopardy claims." *Id.* at 98 & n.4. In its place, the Court reverted to the principles of *Ward* and *Mendoza-Martinez* in what is now called by some courts the "intent-effects test." *See State v. Haskell,* 784 A.2d 4, 8 (Me. 2001); *State v. Cook,* 700 N.E.2d 570, 580 (Ohio 1998).

¶ 32. In an opinion written by Chief Justice Rehnquist, the *Hudson* Court held that whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. That is, a court must first decide whether the legislature either expressly or impliedly indicated a preference that the statute in question be considered civil or criminal. *Hudson,* 522 U.S. at 99.

¶ 33. The Court also held that after making the initial determination of legislative intent, the statute must then be scrutinized to determine whether it is " 'so punitive either in purpose or effect' as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " *Id.* (quoting *Rex Trailer Co. v. United States,* 350 U.S. 148, 154 (1956)) (citations

omitted). The Court identified the factors from *Mendoza-Martinez* as those that should guide the analysis:

> (1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter;* (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99–100 (citing *Mendoza-Martinez,* 372 U.S. at 168–69).

¶ 34. The Court criticized the *Halper* analysis as having deviated significantly from the Court's traditional double jeopardy jurisprudence by applying the Double Jeopardy Clause to a sanction without first determining whether it was criminal or civil in nature. *Id.* at 100. In particular, the Court noted that the *Halper* decision (1) incorrectly focused on whether the sanction was so grossly disproportionate to the harm caused as to constitute "punishment," rather than addressing the threshold question of whether the sanction was "criminal;" and (2) assessed the character of the actual sanctions imposed, rather than evaluating the statute on its face to determine whether it provided for what amounted to a criminal sanction. *Id.* at 100–02. The Court concluded that the *Halper* test was "unworkable." *Id.* at 101–02. Last term, the Court reinforced its return to the pre-*Halper* jurisprudence in another review of a sexually violent person statute, *Seling v. Young,* 531 U.S. 250, 260–62 (2001).

¶ 35. The concern in the present case arises because our 1995 decision in *Carpenter* specifically cited the *Halper* decision in determining that ch. 980 did not violate the protection against double jeopardy. In the relevant section of that case, we stated:

> We are unpersuaded that the indicia of punishment in ch. 980 . . . is so punitive in purpose or effect as to negate the statute's remedial purpose and transform the State's intent to treat into an intent to punish. *Ward,* 448 U.S. at 248. As we have already stated, the relevant inquiry is directed towards the principal purposes served by the sanction, not the underlying nature of the proceedings giving rise to the sanction. *Halper,* 490 U.S. at 447 n.7.

> We conclude that the principal purposes of ch. 980 are the protection of the public and the treatment of convicted sex offenders who are at a high risk to reoffend in order to reduce the likelihood that they will engage in such conduct in the future. These constitute significant nonpunitive and remedial purposes. Chapter 980 cannot be characterized as only serving the punishment goals of deterrence or retribution. *See Halper,* 490 U.S. at 448–49. It is undeniable that the statute is penal to a certain degree in that it potentially subjects individuals to an affirmative restraint. However, where the principal purpose of a civil sanction is nonpunitive, the fact that a punitive motive may also be present does not make the action punishment. . . .

*Carpenter,* 197 Wis. 2d at 271–72.

¶ 36. Rachel first asks this court to apply the broader rule of *Carpenter* and *Halper* when analyzing his case. Rachel argues that the Wisconsin Constitution can and should afford more protection to defendants than the U.S. Constitution, and that this court should not be forced to take "a step backward" by the U.S. Supreme Court's decision in *Hudson.* Rachel notes that

the claims considered "novel" by the *Hudson* Court may be those that give rise to the "mainstream ideas and rights" of the future.

¶ 37. We do not find Rachel's argument persuasive. As we have previously held, because of their similarities in wording and purpose, we have looked to interpretations of the federal Ex Post Facto and Double Jeopardy Clauses when interpreting the analogous clauses of the Wisconsin Constitution. *Carpenter,* 197 Wis. 2d at 263, 272; *Thiel,* 188 Wis. 2d at 699; *Killebrew,* 115 Wis. 2d at 246 n.2. Thus, we afford very great weight to the U.S. Supreme Court's decisions on the federal versions of those clauses when we interpret our own. This was even the case in *Carpenter,* when we applied a version of the *Halper* analysis to ch. 980. *Carpenter,* 197 Wis. 2d at 262–70. We find no reason to depart from this practice for the present case.

■

¶ 38. As the Court noted in *Hudson,* the intent-effects test was traditionally used to determine if a statute was punitive, and proved workable for many years. *Hudson,* 522 U.S. at 101–02. The anomalous holdings in *Halper* and several subsequent cases were, as the Court said, "ill considered," and "unworkable." *Id.* We see no reason to disagree. Thus, we conclude that *Hudson's* intent-effects test is appropriate for determining whether a statute violates the Ex Post Facto or Double Jeopardy Clauses of the Wisconsin Constitution as well as the federal constitution, and we will analyze Rachel's claims using that test.

C

■

¶ 39. We now turn to the question of whether ch. 980 actually violates the constitutional protections

against double jeopardy and ex post facto laws. In doing so, we apply the *Hudson* intent-effects test.

■

¶ 40. Under the first part of the test, we must determine the intent of the legislature in creating the statute in question. Determining the intent of the legislature is primarily a matter of statutory construction, and we must ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Seling,* 531 U.S. at 261; *Hudson,* 522 U.S. at 99 (quoting *Ward,* 448 U.S. at 248); *Hendricks,* 521 U.S. at 361.

¶ 41. Here, there is little question that the legislature intended that ch. 980 be a civil commitment statute, passed for the purposes of control and treatment of the individual. As we noted in *Carpenter:*

> The emphasis on treatment in ch. 980 is evident from its plain language. For example, the notice provision in Wis. Stat. § 980.015(3)(b) requires the agency with jurisdiction over the person to provide the appropriate district attorney and the Department of Justice with documentation of any prior treatment that the subject received while in prison. Under Wis. Stat. § 980.06(1), a person found to be sexually violent is committed to the custody of DHSS for control, care, and treatment, as opposed to the DOC for imprisonment. Further, DHSS is required to "arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person . . . ."

197 Wis. 2d at 266 (citations omitted). None of this statutory language was changed by the Act, and we can easily hold that under the first part of the *Hudson* test, the intent of the legislature in passing ch. 980 was to

create a civil, nonpunitive statute. Rachel does not appear to dispute this point.

■

¶ 42. Moving to the second part of the intent-effects test, then, we determine whether the sanctions imposed by ch. 980 are " 'so punitive in form and effect as to render them criminal' " despite the legislature's intent to the contrary. *Hudson*, 522 U.S. at 104 (citing *Ursery*, 518 U.S. at 290). In applying the second part of the test, we afford the legislative preference for the civil label great deference. Only with "the clearest proof" will we find that what has been denominated a civil remedy is, in actuality, a criminal penalty. *Seling*, 531 U.S. at 261; *Hudson*, 522 U.S. at 100 (citing *Ward*, 448 U.S. at 249).

¶ 43. To determine whether the legislative intent is overcome by the form and effect of the statute, we examine ch. 980 with respect to the factors identified in *Mendoza-Martinez*, and reiterated in *Hudson*: (1) whether ch. 980 involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which ch. 980 applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *Hudson*, 522 U.S. at 99–100; *Mendoza-Martinez*, 372 U.S. at 168–69.

¶ 44. Because our analysis in *Carpenter* was guided by *Halper* rather than strictly by the intent-effects test of *Hudson*, we did not fully apply the *Mendoza-Martinez* factors in that case. As a result, we

think it is necessary to look beyond the mere amendments in our analysis to the statute as a whole. We do place emphasis on the effect of the amendments, however, as they were the impetus for this challenge. Taking the *Mendoza-Martinez* factors into account in this case, we do not think that Rachel has shown, by the clearest proof, that ch. 980, as amended, is so punitive as to counteract the legislature's intent to design a civil commitment statute.

¶ 45. We acknowledge that ch. 980 does involve an affirmative disability or restraint. However, the mere fact of detention does not lead to the inexorable conclusion that the government has imposed punishment. *Hendricks,* 521 U.S. at 363 (citing *United States v. Salerno,* 481 U.S. 739 (1987)). The state may take measures to restrict the freedom of the dangerously mentally ill. *Id.* at 363.

¶ 46. With regard to the recent amendments, however, Rachel argues that by denying a ch. 980 respondent the ability to seek supervised release until 18 months after commitment, the statute necessarily imposes an "affirmative restraint" on a ch. 980 respondent.

¶ 47. Rachel's argument fails for several reasons. First, as we just noted, not all forms of restraint are equivalent to punishment. Second, the "affirmative restraint" complained of by Rachel can be lifted by a number of methods, both before and after the 18–month period, even if some of those methods are not under the direct control of the individual. For instance, the committed individual can petition for discharge

under Wis. Stat. § 980.10 (1999–2000)[4]. Likewise, the Secretary can authorize the individual to petition for discharge at any time under Wis. Stat. § 980.09(1) (1999–2000), and the director of the institution at which the person is committed may petition on the individual's behalf for supervised release at any time under Wis. Stat. § 980.08(1) (1999–2000). Additionally, the individual is entitled to a periodic reexamination within the first six months, and every 12 months thereafter. Wis. Stat. § 980.07(1) (1999–2000). The committing court can also order reexamination of the individual at any time under Wis. Stat. § 980.07(3) (1999–2000).

¶ 48. These procedures provide the individual with a periodic reevaluation of his or her mental status, a regular assessment of the efficacy of his or her treatment, and the ability to reduce the severity of the restriction, if such a reduction is appropriate.[5] All of

---

[4] Although a sexually violent person's first petition under Wis. Stat. § 980.10 may be brought at any time, subsequent petitions brought under this section may have restrictions. The statute provides, in relevant part:

> [A] committed person may petition the committing court for discharge at any time, but if a person has previously filed a petition for discharge without the secretary's approval and the court determined . . . that the person's petition was frivolous or that the person was still a sexually violent person, then the court shall deny any subsequent petition under this section without a hearing unless the petition contains facts upon which a court could find that the condition of the person had so changed that a hearing was warranted.

[5] The dissent expresses particular doubt about the viability of the methods by which a committed person can gain supervised release or discharge, but which are out of the person's control. Justice Bablitch's dissent at ¶ 95. Despite the dissent's predictions about porcine volitation, we think it is more appro-

these results are consistent with the legislative intent of the statute to provide treatment to persons who have been deemed dangerously sexually violent, and to protect the public from these same individuals. As the State also points out, many of these procedures can theoretically be initiated immediately upon commitment. The fact that some of the procedures for seeking supervised release, reexamination, and discharge are not under the direct control of the individual does not, however, convert the statute into a punitive statute.

¶ 49. We find it noteworthy that the Kansas sexually violent person statute reviewed by the U.S. Supreme Court in *Hendricks* contained no provision for immediate commitment to supervised release. Kansas Probate Code Ann. § 59–29a07 (West 2001) provides:

> If the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the secretary of social and rehabilitation services for control, care and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large. Such control, care and treatment shall be provided at a facility operated by the department of social and rehabilitation services. At all times, persons committed . . . shall be kept in a secure facility . . . .

Additionally, the procedures by which sexually violent persons can seek a supervised release status are similar to those currently in place in Wisconsin. *See* Kan. Prob. Code Ann. §§ 59–29a08 (West 2001) (providing for a mandatory annual review in which the court can consider transitional release); 59–29a10 (providing circum-

priate that the agencies and individuals that are charged with monitoring the treatment progress of institutionalized sexually violent persons be given the benefit of the assumption that they will carry out their responsibilities as the legislature has directed.

stances under which the secretary of social and rehabilitation services can authorize a sexually violent person to petition for transitional release); 59–29a11 (providing that a sexually violent person may, at any time, petition for transitional release without the approval of the secretary, subject to certain limitations). Thus, we find it hard to say that the failure to provide for immediate supervised release or the limited ability of an individual to seek supervised release necessarily converts the statute into a punitive one.

¶ 50. Historically, an involuntary commitment proceeding such as the one here has not been regarded as punishment, and the recent amendments do not influence this consideration. Confinement under ch. 980 is premised on a finding that the individual has a mental disorder,[6] and that the disorder renders the individual dangerous to others because of the substantial likelihood that the individual will engage in acts of sexual violence. Wis. Stat. § 980.02(2)(b)-(c) (1999–2000). It is well-established that the State may take measures to restrict the freedom of the dangerously mentally ill. *Hendricks,* 521 U.S. at 363 (citing *Salerno,* 481 U.S. at 746). If it were otherwise, all involuntary civil commitments would be considered punitive. *Id.* As the U.S. Supreme Court has noted, the involuntary confinement of mentally unstable individuals who pose a threat to the public is a "classic example of nonpunitive detention." *Id.* Thus, the historical perception of such a commitment cannot reasonably be said to be punitive.

¶ 51. Additionally, ch. 980 does not have a scienter requirement, nor did it contain a scienter element

---

[6] For the purposes of ch. 980, "mental disorder" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." Wis. Stat. § 980.01(2) (1999–2000).

before the statute was amended. This characteristic distinguishes ch. 980 from most criminal statutes and, as the U.S. Supreme Court has pointed out, the absence of a mental state requirement is evidence that confinement under the statute is not intended to be retributive. *Hendricks,* 521 U.S. at 362. Chapter 980, both pre- and post-amendment, required a finding of a mental disorder, and a finding of dangerousness based on that disorder, rather than any type of culpable criminal mental state. Wis. Stat. § 980.02(2) (1999–2000). The absence of a scienter requirement thus indicates that ch. 980 is not punitive in nature.

¶ 52. Furthermore, ch. 980 does not promote the traditional criminal goals of punishment, retribution, and deterrence. Like the Kansas statute analyzed by the U.S. Supreme Court in *Hendricks,* the statute here seeks to confine persons with mental disorders that render those persons dangerous to the public. The subjects of ch. 980 are those who cannot control their actions, and who therefore would not likely be deterred by the threat of confinement.

¶ 53. Furthermore, the statute does not attach culpability to a respondent's conduct. Although evidence of prior acts may be admissible, it is admissible for the purposes of proving a mental disorder, or to predict future dangerousness. Likewise, a criminal conviction is not always necessary as a prerequisite for commitment under ch. 980. *See* Wis. Stat. § 980.02(2)(a) (1999–2000).[7] Thus, it is not evident that the State has

---

[7] We note, however, that if a person is not convicted of a sexually violent offense, he or she must still either be found delinquent of a sexually violent offense or be found not guilty of a sexually violent crime by reason of mental disease or defect in order to be committed under ch. 980. Wis. Stat. § 980.02(2)(a) (1999–2000).

created a statute that serves the purposes of retribution.

¶ 54. Rachel argues that the amendments regarding supervised release have added a punitive effect to ch. 980. Rachel points us to the passage in *Carpenter*, where we held that the primary purpose of ch. 980 was to provide treatment:

> Respondents rely heavily on the fact that those committed under ch. 980 face an indefinite period of confinement in a secure facility as evidence that the true intent of the statute is punishment. However, ch. 980 expressly provides for supervised release either at the time of commitment, or upon the person's subsequent petition after receiving treatment. Further, the person is entitled to discharge as soon as his or her dangerousness or mental disorder abates.

197 Wis. 2d at 268 (citations omitted). Rachel suggests that, at the time, the procedures available for seeking supervised release or discharge by a person committed under ch. 980 were a primary reason that the statute was held constitutional in *Carpenter*. Rachel suggests that confinement without the possibility of a lesser restriction must clearly have been done for the purpose of retribution and deterrence rather than treatment.

¶ 55. We disagree. The section from *Carpenter* cited by Rachel does not suggest that the constitutionality of the statute depended upon the fact that there was the immediate possibility for supervised release. Rather, the passage focused on the fact that the "potentially indefinite" nature of the confinement was linked to the dangerousness of the individual, and that there were avenues for decreasing the severity of the restrictions on that individual if treatment is effective in lessening the individual's dangerousness. Essentially, our discussion of supervised release in *Carpenter* boiled

down to the fact that when a sexually violent person is no longer dangerous enough to be kept in an institutional setting, that person has the potential to be subjected to less stringent controls (such as supervised release), or when no longer dangerous, to be freed from custody completely.

¶ 56. Under the new amendments, that potential is still present. As we pointed out previously, a person committed under ch. 980 has many avenues for seeking release or lesser restriction, even if they are not all under the person's direct control. Thus, our fundamental reasoning in *Carpenter* still holds true—the "potentially indefinite" nature of the confinement depends on a determination of the individual's dangerousness, which is reassessed throughout the individual's confinement to determine if lesser restriction is appropriate.

¶ 57. The behavior to which ch. 980 applies is also not itself a crime. As stated previously, commitment under ch. 980 requires a finding that the individual has a mental disorder, and that the disorder renders the individual dangerous to others because of the substantial likelihood that the individual will engage in acts of sexual violence. Wis. Stat. § 980.02(2)(b), (c) (1999–2000).

¶ 58. Rachel argues that the behavior on which ch. 980 relies is a crime, and the statute is therefore punitive. However, this reasoning has been rejected by the U.S. Supreme Court in its analysis of other involuntary commitment statutes that may be "triggered" by a crime. *Hendricks,* 521 U.S. at 362; *Allen v. Illinois,* 478 U.S. 364, 371 (1986). Here, ch. 980 does require that the individual either have been found guilty of a sexually violent offense, delinquent of a sexually violent offense, or not guilty of a sexually violent offense by reason of mental disease or defect. Wis. Stat.

§ 980.02(2)(a) (1999–2000). However, a mere connection to criminal activity is not sufficient to render the statute punitive. *Ursery*, 518 U.S. at 292. The fundamental nature of the statute is still focused on the treatment of the individual and the protection of the public, rather than punishment. The amendments to the law involving supervised release have no bearing on this factor.

¶ 59. Finally, the intent behind the ch. 980 sanction, involuntary commitment, is easily assigned to a nonpunitive purpose. As we have repeatedly noted, the involuntary commitment is imposed both for the treatment of the individual and for the protection of the public. We do not find this sanction excessive, given the statute's purpose, because the confinement is linked to the individual's dangerousness.

¶ 60. Under the intent-effects test, we conclude that ch. 980, as amended, is not punitive in nature. Because we hold that the intent of the legislature was to create a civil commitment statute, and Rachel has not shown "by the clearest proof" that the effects of the statute are otherwise, we conclude that ch. 980 is not a punitive criminal statute. Because whether a statute is punitive is a threshold question for both the double jeopardy and the ex post facto analysis, we must also conclude that neither of those clauses is violated by ch. 980.

## III. DUE PROCESS

¶ 61. We now turn to Rachel's argument that the amendments to ch. 980 violate his right to the due process of law. Civil commitment, such is at issue here, constitutes a deprivation of liberty that is subject to due

process protection. *Addington v. Texas,* 441 U.S. 418, 425 (1979). Freedom from physical restraint is a fundamental right protected by the due process clause from wrongful, arbitrary governmental action. *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992).

¶ 62. We first addressed whether ch. 980 violated substantive due process in *State v. Post,* 197 Wis. 2d 279. In *Post,* we looked at several characteristics of ch. 980 in determining whether substantive due process was violated. First, we held that the use and definition of the term "mental disorder" rendered the statute narrow enough to identify those persons it encompasses with reasonable accuracy. *Id.* at 303–04 (citing *O'Connor v. Donaldson,* 422 U.S. 563, 575 (1975)).

¶ 63. Next, we held that treatment was a bona fide goal of ch. 980, and we presumed that the legislature would proceed in good faith to fund the treatment programs described therein. *Id.* at 307–08 (citing *State ex rel. Thomson v. Zimmerman,* 264 Wis. 644, 652, 60 N.W.2d 416 (1953)). Third, we deemed ch. 980's method for the determination of "dangerousness" constitutionally sound. *Id.* at 311–13.

¶ 64. Finally, we looked at the duration and nature of the commitment, and determined that they were consistent with the purpose of ch. 980. *Id.* at 313. We noted that confinement under ch. 980 permissibly balances the individual's liberty interests with the public's right to be protected from the dangers posed by those who have been proven to have a propensity toward sexual violence. *Id.* at 317. We also noted that the U.S. Supreme Court has recognized a compelling state interest in protecting the community from dangerously mentally ill persons and in providing care and treatment for those persons with mental disorders who pose a danger to the community. *Id.* at 302–03 (citing *Add-*

247

*ington,* 441 U.S. at 426; *Salerno,* 481 U.S. at 748–49). We concluded that ch. 980 did not violate substantive due process. *Id.* at 303.

¶ 65. In the present case, Rachel appears to limit his challenge to the "duration and nature" portion of the analysis. In his argument, Rachel points to language from *Post,* where we stated:

> Individuals found to be sexually violent persons are committed to the custody of DHSS "for control, care and treatment" in "the least restrictive manner consistent with the requirements of the person and in accordance with the court's commitment order."

197 Wis. 2d at 313 (quoting Wis. Stat. §§ 980.06(1) and (2)(b) (1993–94)). Rachel argues that because we "strongly relied upon" that language to find that ch. 980 did not violate due process, the repeal of the language from the statute makes ch. 980 unconstitutional. Rachel suggests that there is no longer even any pretext of treatment in the statute, and that ch. 980 clearly violates the requirements of due process set forth by the U.S. Supreme Court in *Foucha v. Louisiana,* 504 U.S. 71.

¶ 66. We do not find Rachel's argument persuasive. The mere limitation of a committed person's access to supervised release does not impose a restraint to the point where it violates due process. As we noted in our double jeopardy analysis, *supra* ¶¶ 54–56, our discussion of the "least restrictive environment" was not a holding that made a committed individual's personal ability to seek supervised release indispensable to the statute. Rather, we recognized that the statute passes constitutional muster because the physical confinement of the individual is linked to the dangerousness of the

committed person. Because there are methods in place for regularly determining the dangerousness of the person and reducing or removing the physical restrictions when the person is less or no longer dangerous, the intent of the statute is met.

¶ 67. This reasoning does not change merely because some methods of seeking supervised release or discharge from confinement are not under the committed person's direct control. The individual still can petition for discharge under Wis. Stat. § 980.10; the Secretary can authorize the individual to petition for discharge under Wis. Stat. § 980.09(1); and the director of the institution may petition for the individual's supervised release under Wis. Stat. § 980.08(1). The individual is also entitled to regular periodic reexaminations under Wis. Stat. § 980.07(1), or reexaminations at the discretion of the court under Wis. Stat. § 980.07(3). These procedures allow for consideration of any improvement in an individual's mental health, and allow the possibility of less restrictive measures or discharge from custody if the person is less dangerous or no longer dangerous.

¶ 68. As amended, ch. 980 still serves the legitimate and compelling state interests of providing treatment to the dangerously mentally ill and protecting the public from the dangerously mentally ill, and the statute is still narrowly tailored to meet those interests. Therefore, we conclude that ch. 980 does not violate substantive due process.

## IV. CONCLUSION

¶ 69. In conclusion, we hold that *Hudson's* intent-effects test is the proper threshold test to determine if a statute is punitive for the purposes of the Double

Jeopardy and Ex Post Facto Clauses of the Wisconsin Constitution as well as the U.S. Constitution. Applying the intent-effects test, we conclude that ch. 980, as amended by 1999 Wis. Act 9, is not a criminal, punitive statute. Therefore, we must also hold that the statute does not violate the Double Jeopardy or Ex Post Facto Clauses of the Wisconsin or the U.S. Constitution.

¶ 70. We also hold that the amendments do not put ch. 980 in violation of substantive due process guarantees. The statute continues to serve the compelling state interests of treatment of the dangerously mentally ill and protection of the public, and is narrowly tailored to meet those interests. Because we hold that the statute is constitutional, we affirm the decision of the circuit court and uphold the circuit court's decision to involuntarily commit Rachel as a sexually violent person under ch. 980.

*By the Court.*—The order of the circuit court is affirmed. DAVID T. PROSSER, J., did not participate.

¶ 71. ANN WALSH BRADLEY, J. *(concurring)*. The issue addressed by the majority is whether the amendments that limit a Wis. Stat. ch. 980 respondent's ability to seek supervised release are constitutional. Although I have reservations, ultimately I am persuaded that the respondent has not met the high burden of proving beyond a reasonable doubt that the amendments—as written—transform a constitutional statute into an unconstitutional statutory scheme. Nevertheless, I write separately to voice my concerns that the supervised release provisions—as applied—are on the brink of running afoul of the constitution.

¶ 72. In *State v. Carpenter,* 197 Wis. 2d 252, 267, 541 N.W.2d 105 (1995), which I authored, the court assumed that the State was "prepared to provide spe-

cific treatment to those committed under ch. 980 and not simply warehouse them."

¶ 73. In *State v. Post,* 197 Wis. 2d 279, 308, 541 N.W.2d 115 (1995), where I joined the majority, the court assumed that "the legislature will proceed in good faith and fund the treatment programs necessary for those committed under chapter 980."

¶ 74. In response to the skepticism expressed by the dissent as to whether supervised release is a viable option, the majority in this case once again relies on an assumption that the State will meet its statutory and constitutional obligations. The majority writes: "we think it is more appropriate that the agencies and individuals that are charged with monitoring the treatment progress of institutionalized sexually violent persons be given the benefit of the assumption that they will carry out their responsibilities as the legislature has directed." Majority op. at ¶ 48 n.5.

¶ 75. The court's assumptions and the State's good faith are wearing thin.

¶ 76. We continue to gain experience with the way that ch. 980 has played out in the real world. Since *Carpenter* and *Post,* the case law has become rife with examples of the State's inability to provide appropriate placements for those committed under ch. 980.

¶ 77. For instance, in *State v. Sprosty,* 227 Wis. 2d 316, 322, 595 N.W.2d 692 (1999), the committed individual went unreleased solely because his county of residence "did not have the appropriate resources to address his treatment needs in a community setting." Other counties with facilities were apparently "unwilling or unable to admit him." *Id.*

¶ 78. Likewise, in *State v. Krueger,* 2001 WI App 76, ¶ 2, 242 Wis. 2d 793, 626 N.W.2d 83, "difficulties finding a residence for Krueger derailed the planned

251

release." Krueger was to live with his stepfather, but this plan failed after local media attention. *Id.* at ¶¶ 28, 37.

¶ 79. There was more of the same in *State v. Castillo*, 205 Wis. 2d 599, 556 N.W.2d 425 (Ct. App. 1996). In that case, the State was unable to locate a community placement that would accept the committed individual. *Id.* at 610. After other alternatives were rejected as impracticable, it settled on placement at a halfway house. *Id.* at 605. Soon after, however, the halfway house rejected the placement because of fear of "public reaction" and that "the town would take zoning action against it." *Id.* A final alternative, placement in a private apartment under supervision of a private social worker also failed because of community pressure. *Id.*

¶ 80. And there is still more: In *State v. Keding*, 2002 WI 86, 254 Wis.2d 334, 646 N.W.2d 375, one of the many ch. 980 cases that has reached this court in this term alone—even the State recognized the apparent futility of attempted supervised release placements for the respondent. During the course of oral arguments, the State acknowledged that attempted placement in five different counties had failed. When asked if there was any alternative in the community for the respondent, the State replied, "I don't know, and apparently [the circuit court judge] didn't believe there was." The State also said: "If you're asking me what should we do about it, I could come up with some things, but it's not for me to do it. It's for the legislature to do it."

¶ 81. One can only speculate as to how many additional cases there are that present similar facts.

¶ 82. When an individual committed under ch. 980 cannot be appropriately placed, his treatment is severely hampered, if not undermined completely. The viability and feasibility of treatment is a necessary

predicate to ch. 980's constitutionality. Should the promise of treatment be proven an illusion, this necessary predicate to the constitutionality of ch. 980 is removed.

¶ 83. Although the reality of supervised release and its implications for treatment is my primary concern in writing today, it is not my only one. The majority reasons that ch. 980's constitutionality is also predicated on the various procedures available under the statute for the committed individual to secure review of his commitment. Majority op. at ¶ 48. Whether these procedures are regularly followed by the State is also open to question. In one recent case, it took the State nearly two years to provide the committed individual with the reexamination that the statute requires to occur within six months. *State ex rel. Marberry v. Macht,* 2002 WI App 133, ¶ 28, 254 Wis. 2d 690, 648 N.W.2d 522, *review granted* June 11, 2002 (No. 99–2446).

¶ 84. Chapter 980 cannot continue to survive constitutional scrutiny if the predicates for its constitutionality prove to be false. The State must take steps to ensure that proper placement and treatment actually happen. When an individual committed under ch. 980 cannot be appropriately placed, or is not timely assessed, the viability and feasibility of treatment are called into question.

¶ 85. Treatment is a necessary component to the constitutionality of the ch. 980 statutory scheme. Without it, a purportedly civil commitment becomes a "mechanism for retribution or general deterrence— functions properly those of criminal law, not civil commitment." *Kansas v. Crane,* 534 U.S. 407, 412, 122 S. Ct.

867, 870 (2002) (internal quotations omitted) (citing *Kansas v. Hendricks,* 521 U.S. 346, 372–73 (1997) (Kennedy, J., concurring)).

¶ 86. It is the oft-stated rule that a statute is presumed constitutional and must be proven unconstitutional "beyond a reasonable doubt." *See, e.g., State v. Hahn,* 2000 WI 118, ¶ 30, 238 Wis. 2d 889, 618 N.W.2d 528. It is only this rule that leads me to join the mandate of the majority opinion. What little doubt remains continues to slip away.

¶ 87. Accordingly, I respectfully concur in the mandate.

¶ 88. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting).* Justice Bradley's concurrence is very persuasive. In my opinion it leaves no doubt about the unconstitutionality of the statute. I therefore agree with the conclusion reached by Justice Bablitch in his dissent.

¶ 89. WILLIAM A. BABLITCH, J. *(dissenting).* I respectfully disagree with the majority's conclusion that the present Wis. Stat. ch. 980 is constitutional. After this court in *State v. Post,* 197 Wis. 2d 279, 541 N.W.2d 115 (1995), and *State v. Carpenter,* 197 Wis. 2d 252, 541 N.W.2d 105 (1995), declared ch. 980 constitutional, the legislature passed several key amendments to ch. 980 that fundamentally altered the purpose of the statute from treatment and protection to punishment. This the legislature cannot constitutionally do. Accordingly, I respectfully dissent.

¶ 90. Wisconsin's sexual predator law allows the government to do something quite contrary to all of our notions of individual freedom and the government's right to deprive its citizens of that freedom. It allows

the government to continue to deprive a person of his freedom after he has served his sentence. The government can do that, but only under very narrowly prescribed circumstances. A majority of this court, including this writer, upheld the constitutionality of that law in *Post* and *Carpenter,* concluding that treatment and protection of the public, not punishment, were its primary purposes. *See Post,* 197 Wis. 2d at 313; *Carpenter,* 197 Wis. 2d at 266.

¶ 91. The majority based its conclusion that the primary purpose of the law was not punitive on two aspects of that law. First, the court's initial order must specify either supervised release or institutional care. *Id.* The statute set forth the considerations in determining if the commitment would be to a secured facility or to supervised release. Second, it also provided that a committed person could petition the court for supervised release six months after the initial commitment order. *Id.* at 268.

¶ 92. Both of these provisions have been fundamentally altered and accordingly have changed the very nature of the law from treatment and protection to punishment.

¶ 93. First, the amended statutes eliminate the option of supervised release and now require mandatory involuntary commitment when a person is found to be a sexually violent person. Involuntary commitment is required without consideration as to the most appropriate and effective treatment while providing public safety. The court no longer has discretion to order supervised release if warranted by an individual's condition. Commitment is mandatory regardless of the particulars.

¶ 94. Second, a person committed for institutional care must now wait three times longer (18

months instead of six months) to petition the committing court for supervised release. A committed person can no longer request a timely review of his or her own condition, thereby ensuring departmental accountability. These changes significantly alter the prior law and collectively amount to punishment of, rather than treatment for, the mentally ill.

¶ 95. The majority points out that there are several avenues for petitioning the court for discharge or supervised release. These are illusory. One of the options is that the petition can be initiated by the committing court, the secretary of health and family services, or the director of the facility where the person is institutionalized. *See* majority op. at ¶ 47. The reality, plain and simple, is that pigs will fly before any of these options are exercised.

¶ 96. The second option is for the committed person to petition the court for discharge. This too is illusory. Why would a court allow an individual to be discharged without any supervision within that 18 months when the legislature will not even allow supervised release within that 18 months? The reality is, this just won't happen.

¶ 97. The majority also notes that Kansas's sexually violent person statutes reviewed by the U.S. Supreme Court in *Kansas v. Hendricks,* 521 U.S. 346 (1997), do not provide for immediate supervised release upon commitment. *See* majority op. at ¶ 49. However, unlike Wisconsin's amended Wis. Stat. ch. 980, the Kansas statutes do allow committed individuals to petition for transitional release at *any time. See* Kan. Stat. § 59–29a11; *see also Hendricks,* 521 U.S. at 353.

¶ 98. In essence, Wis. Stat. ch. 980 as amended involuntarily commits individuals found to be sexually violent persons regardless of what would be the most

effective and appropriate treatment. Involuntary civil commitment, without even the opportunity to petition for supervised release for 18 months, cannot be described in any way except punitive. If treatment and public safety were in fact the primary purposes of ch. 980, then the nature and duration of commitment would be based on a person's particular condition rather than a requirement of a minimum term of confinement. In fact, mandatory commitment may actually detract from the purported purposes of treatment and public safety. It is possible that keeping an individual committed who is ready for supervised release could actually impede his or her successful reintegration into society.

¶ 99. The majority claims that the amended Wis. Stat. ch. 980 is not punitive under the 2–prong intent-effects test of *Hudson v. United States,* 522 U.S. 93 (1997). *See* majority op. at ¶ 60. I disagree. First, the legislature's amendments to ch. 980 demonstrate a marked shift from treatment and public safety to punishment. In *Carpenter,* this court reasoned that ch. 980 emphasized treatment, which was evident from its plain language:

> Under Wis. Stat. § 980.06(1), a person found to be sexually violent is committed to the custody of DHSS for control, care, and treatment, *as opposed to the DOC for imprisonment.* Further, DHSS is required to "arrange for control, care and treatment of the person *in the least restrictive manner* consistent with the requirements of the person . . . ."

*Carpenter,* 197 Wis. 2d at 266 (emphases added).

¶ 100. Wisconsin Stat. § 980.06 was fundamentally altered by requiring commitment to institutional care and eliminating the language that treatment and control are to be provided in the least restrictive man-

257

ner. The amended § 980.06 now states: "A commitment order under this section shall specify that the person be placed in institutional care." Thus, this court's conclusion in *Carpenter* that the legislature's primary aim under Wis. Stat. ch. 980 is to treat sexually violent persons, rather than punish them, rests on statutory language that has been eliminated. Contrary to this court's assessment of the prior law in *Carpenter,* ch. 980 as amended does *not* "provide specific treatment to those committed . . . [but rather] simply warehouse[s] them" by foreclosing the option of supervised release regardless of an individual's condition. *Carpenter,* 197 Wis. 2d at 267.

¶ 101. Second, in determining whether Congress, despite its intentions to the contrary, enacted a statutory scheme that was so punitive in purpose and effect to negate that intention, the U.S. Supreme Court in *United States v. Ward,* 448 U.S. 242, 250–51 (1980), used the seven considerations listed in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 166–68 (1963). These factors included:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

*Id.* at 168–69 (footnotes omitted). Here, applying those same guidelines leads to the following determinations: (1) Wis. Stat. ch. 980, as amended, requires affirmative restraint of an individual upon being found

a sexually violent person; (2) institutional confinement has historically been regarded as a form of punishment; (3) individuals committed as sexually violent persons usually have knowledge of their offenses that constitutes scienter; (4) as amended, ch. 980 promotes the aims of punishment – retribution and deterrence – by imposing a mandatory term of involuntary confinement; (5) the behavior to which ch. 980 applies, namely sexually violent offenses, is criminal; and (6–7) the mandatory commitment under ch. 980, without regard to an individual's particular condition, is excessive in relation to the alternative purposes of treatment and protection of the public. Given these factors, the conclusion is inevitable: the statute is punitive.

¶ 102. I concurred in *Carpenter* because under the prior law there was a "rational connection between the affirmative restraint and treatment required by the statute and its purpose of protecting the public." *Carpenter*, 197 Wis. 2d at 278 (Bablitch, J., concurring). I cannot reach the same conclusion due to these two fundamental changes to Wis. Stat. ch. 980: (1) the elimination of the option of supervised release at the time of commitment and (2) the tripling of the length of time an individual must wait to petition for supervised release. These amendments transform the former civil statutory scheme of ch. 980 to a punitive one and thereby violate the constitutional requirements of due process, double jeopardy, and in Rachel's case, ex post facto. Accordingly, I respectfully dissent.