IN RE the COMMITMENT OF Edwin C. WEST:

STATE of Wisconsin, Petitioner-Respondent,

v.

Edwin Clarence WEST,
Respondent-Appellant-Petitioner.

Supreme Court

*No. 2009AP1579. Oral argument May 3, 2011.
—Decided July 26, 2011.*

2011 WI 83

(Also reported in 800 N.W.2d 929.)

For the respondent-appellant there were briefs and oral argument by *Ellen Henak,* assistant state public defender.

For the petitioner-respondent the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals[1] affirming an order of the Milwaukee County Circuit Court denying Edwin Clarence West's (West) petition for supervised release.

¶ 2. In 1997 a jury found that West was a sexually violent person under Wis. Stat. ch. 980, and he was thereafter committed under that chapter. Under § 980.08(1), persons committed under ch. 980 may petition for supervised release into the community after at least 12 months have passed since the person was committed or his last petition for supervised release was rejected. The Wisconsin Legislature amended this

---

[1] *State v. West,* No. 2009AP1579, unpublished slip op. (Wis. Ct. App. Aug. 10, 2010).

statute in 2005, removing language that specifically allocated the burden of proof to the State in a hearing on the petition.

¶ 3. In 2008 West filed a motion with the circuit court to interpret whether amended § 980.08(4)(cg) continues to allocate the burden to the State. One month after filing this petition, he also filed a petition seeking supervised release. The circuit court denied his motion, finding that the amendments to § 980.08(4)(cg) unambiguously placed the burden of proof with the committed individual. The circuit court also denied his petition for supervised release.

¶ 4. West appealed, and argued to the court of appeals that the burden of proof does not rest with the committed person, and if it did, such allocation would violate the Wisconsin and United States Constitutions. The court of appeals disagreed, and in a per curiam opinion affirmed the circuit court.

¶ 5. West asks us to interpret the supervised release provision, Wis. Stat. § 980.08(4)(cg), to place the burden of proof with the State. He argues that, although the statute is ambiguous, the language, history, and scope of the statute support his position. He also asserts that the burden must remain with the State to prevent § 980.08(4)(cg) from violating the due process and equal protection clauses of the Wisconsin and United States Constitutions.[2]

---

[2] The Fourteenth Amendment to the United States Constitution provides in part, "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The court has held that the due process clause in Article I, Section 1 of the Wisconsin Constitution is the "substantial equivalent" of the federal due process clause. *Soc'y Ins. v. LIRC*, 2010 WI 68, ¶ 28 n.11, 326

¶ 6. We conclude that amended Wis. Stat. § 980.08(4)(cg) unambiguously places the burden of proof with the committed individual, and that the appropriate burden of persuasion is clear and convincing evidence. We further hold that this allocation does not violate the guarantees of due process and equal protection in the Wisconsin and United States Constitutions.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 7. In 1993 West was convicted of second degree sexual assault in violation of § 940.225(2)(a). Prior to West's release, the State petitioned to have him committed as a sexually violent person, pursuant to Wisconsin Statutes ch. 980. West was committed under ch. 980 in July 1997.

¶ 8. In preparation for the commitment hearing to establish probable cause to commit West, the State offered various medical examinations, including a report by Dr. Kenneth Diamond (Dr. Diamond), a senior staff psychologist for the Milwaukee Clinical Services Unit of the Department of Corrections. Dr. Diamond's evaluation of West compiled the results of various records and other, in-person, clinical evaluations. It was Dr. Diamond's opinion that West suffered from cocaine

Wis. 2d 444, 786 N.W.2d 385 (citing *Neiman v. Am. Nat'l Prop. & Cas. Co.,* 2000 WI 83, ¶ 8, 236 Wis. 2d 411, 613 N.W.2d 160). Similarly, the equal protection clause of the Wisconsin Constitution declares that, "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty, and the pursuit of happiness . . . ." Wis. Const. art I, § 1. Our interpretation is the same for both the federal and state equal protection clauses. *Metro. Assocs. v. City of Milwaukee,* 2011 WI 20, ¶ 22, 332 Wis. 2d 85, 796 N.W.2d 717 (citing *Nankin v. Vill. of Shorewood,* 2001 WI 92, ¶ 11 n.5, 245 Wis. 2d 86, 630 N.W.2d 141). Accordingly, where this opinion refers to "due process" or "equal protection," our analysis encompasses both federal and state constitutions.

and alcohol abuse (both in remission) and from antisocial personality disorder, a mental disorder warranting commitment. Based on West's history of sexual assaults and his performance on various behavioral tests, Diamond stated:

> Psychological testing indicates that he is an aggressive individual with possible sexual problems. On the PCL-R [Psychopathy Checklist Revised], his total score is diagnostic of psychopathy. Additionally, he scores on several actuarial risk factors which are strongly indicative of violent recidivism and these include: a high degree of psychopathy, pre-treatment deviant sexual arousal, nonsexual criminality, denial or minimization of previous offense, and use of force and/or threat of force during crime. It is my opinion to a reasonable degree of psychological certainty that the antisocial personality disorder, cocaine abuse and alcohol abuse exhibited by Edwin C. West . . . are congenital or acquired conditions . . . that predispose Edwin C. West to engage in acts of sexual violence. It is also my opinion that these mental disorders exhibited by Edwin C. West create a substantial probability that he will engage in acts of sexual violence.

¶ 9. Dr. Diamond's summary of West's history of sexual assaults included:

(a) In 1982, at age 17, sexual contact with his then-15–year-old girlfriend, whom he impregnated;

(b) In 1988, at age 23, a conviction for choking and raping a female acquaintance, for which West received probation;

(c) In 1991, a probation violation for picking up a 16–year-old girl and threatening to rape her if she refused to kiss him, and then attempting to have intercourse with her;[3]

---

[3] It was for this offense West was ultimately convicted of third-degree sexual assault, contrary to Wis. Stat. § 940.225(2)(a).

(d) In 1991, an accusation that West forced a woman into her bedroom where he pushed her down and ejaculated on her; and,

(e) Also in 1991, an accusation that West terrorized and stalked a woman on the highway, although the woman did not press charges.

¶ 10. Finally, reports also indicated that in at least four states, West had adult criminal convictions including disorderly conduct and sexual assault, burglary and robbery, and auto theft.

¶ 11. Based on these factors, as well as his personal observations, Dr. Diamond recommended West be committed under ch. 980. Dr. Diamond testified at trial, and his report was admitted into evidence. In May 1997 a jury found West to be a sexually violent person under ch. 980. He was initially admitted to the Wisconsin Resource Center for treatment, and transferred in 2001 to Sand Ridge Secure Treatment Center.

¶ 12. Between January 1998 and April 2009, during re-examination and review of West's classification as a sexually violent person, Department of Health and Family Services (DHFS) evaluators consistently found that West continued to be a sexually violent person, and consistently recommended against either supervised release or discharge.[4] Only one re-examination, conducted by Hollida Wakefield in May 2008, indicated that West had made progress. While the report acknowledged that West still required treatment, it took the position that treatment could occur in the community.

---

[4] These re-examination reports and citations to the record do not include additional Treatment Progress Reports prepared on an annual basis. The Treatment Progress Reports are, however, considered in the re-examination reports.

¶ 13. In West's most recent examination in April 2009, however, the examiner diagnosed West with four mental disorders: paraphilia, alcohol dependence, polysubstance dependence, and antisocial personality disorder. The examiner found West to continue to be a sexually violent person and recommended against supervised release or discharge.

¶ 14. During his commitment, West requested supervised release in October 2000, July 2001, April 2002, and April 2008. He withdrew the 2000 and 2002 petitions without judgment. West also petitioned for discharge in April 2007 but withdrew that petition after his April re-examination results. He also petitioned for discharge in May 2009.

¶ 15. In March 2008 West filed a motion with the Milwaukee County Circuit Court, Martin J. Donald, Judge, to interpret Wis. Stat. § 980.08(4)(cg) as allocating the burden of proof to the State in a hearing on supervised release. Prior to the statute's amendment,[5] the presumption in supervised release cases was to grant a petition for supervised release unless the State met the burden of proving that release was not warranted. Wis. Stat. § 980.08(4)(b) (2003–04). The prior version of the statute required a circuit court to:

> grant the petition unless the state proves by clear and convincing evidence . . . that it is still likely that the person will engage in acts of sexual violence if the person is not continued in institutional care . . . [or] . . . [t]hat the person has not demonstrated significant progress in his or her treatment or that the person has refused treatment.

*Id.*

---

[5] Amended and revised by 2005 Wis. Act 434, § 118.

¶ 16. However, effective June 2006, the statute was revised to read that "[t]he court may not authorize supervised release unless . . . the court finds that all of the following criteria are met." Wis. Stat. § 980.08(4)(cg). The amended statute does not mention any burden of proof.

¶ 17. On August 1, 2008, the circuit court denied West's motion. In its oral decision, the court determined that § 980.08(4)(cg) unambiguously places the burden of proof on the civilly-committed individual. Additionally, the court held that placement of such burden on the individual offends neither the due process nor equal protection clauses of the Constitution. On the same day, the circuit court held evidentiary hearings on West's petition for supervised release, followed by further hearings on October 10, 2008. The circuit court ultimately denied the petition for supervised release.

¶ 18. West appealed, and the court of appeals affirmed the circuit court. In its decision, the court relied on *State v. Rachel* (*Rachel II*), 2010 WI App 60, 324 Wis. 2d 465, 782 N.W.2d 443, in which the court of appeals rejected arguments identical to those raised by West. *State v. West*, No. 2009AP1579, unpublished slip op., ¶ 4 (Wis. Ct. App. Aug. 10, 2010).

¶ 19. The court of appeals concluded that the statute was unambiguous, and that the plain language indicates the burden is to be placed on the petitioning committed individual. *Id.*, ¶ 5. The court reasoned that by beginning the provision with language to deny supervised release unless certain criteria are met, the legislature intended to create a presumption of institutionalization that must be overcome by the moving party. *Id.* Furthermore, "it would be impractical, if not absurd, to place the burden on the State to demonstrate factors weighing in favor of release because the State

has no incentive to do so." *Id.* (citing *Rachel II*). Finally, the court rejected West's argument that the statute, as amended, was unconstitutional. *Id.*, ¶ 6. Again, the court of appeals relied on its holding in *Rachel II. Id.*

¶ 20. West petitioned this court for review. We granted the petition on January 11, 2011.

## II. STANDARD OF REVIEW

¶ 21. This appeal requires us to interpret amended Wis. Stat. § 980.08(4)(cg). Statutory interpretation is a question of law that the court reviews de novo. *State v. Burris,* 2004 WI 91, ¶ 31, 273 Wis. 2d 294, 682 N.W.2d 812. The question of who bears the burden of proof under a statute also is a question of law. *Acuity Mut. Ins. Co. v. Olivas,* 2007 WI 12, ¶ 31, 298 Wis. 2d 640, 726 N.W.2d 258. We determine questions of law independently from the circuit court and court of appeals, but we benefit from their analyses. *Id.*

¶ 22. The constitutionality of a statute is a question of law that we review de novo. *State v. Cole,* 2003 WI 112, ¶ 10, 264 Wis. 2d 520, 665 N.W.2d 328. "Statutes are presumed to be constitutional, and a party challenging a statute's constitutionality must demonstrate that it is unconstitutional beyond a reasonable doubt." *State v. McGuire,* 2010 WI 91, ¶ 25, 328 Wis. 2d 289, 786 N.W.2d 227 (citing *State v. Baron,* 2009 WI 58, ¶ 10, 318 Wis. 2d 60, 769 N.W.2d 34).

## III. DISCUSSION

¶ 23. West's case requires us to interpret Wis. Stat. § 980.08(4)(cg) to determine who bears the burden of proof in a petition for supervised release. This

inquiry involves two components: the burden of production, and the burden of persuasion. We next consider West's claim that to place the burden of proof upon the committed individual violates the due process and equal protection clauses of the Wisconsin and United States Constitutions. We analyze both arguments in the context of the history of ch. 980 and civil commitment law.

A. Chapter 980 Sexually Violent Person Commitments

¶ 24. In May 1994 the Wisconsin Legislature enacted ch. 980, the Sexually Violent Person Commitment law.[6] Chapter 980 permits the circuit court to commit an individual found to be a "sexually violent person" and to place the person under the DHFS's custody "for control, care and treatment until such time as the person is no longer a sexually violent person." Wis. Stat. § 980.06. As originally enacted, Wis. Stat. § 980.01(7) defined a "sexually violent person" as:

> [A] person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

*Id.* (1993–94).[7]

¶ 25. One year after the law's enactment, this court addressed the constitutionality of ch. 980 in the

---

[6] Chapter 980 was created pursuant to 1993 Wis. Act 479, § 40.

[7] Chapter 980's definition for "sexually violent person" as enacted differs from the current definition which substitutes "likely" for "substantial probability" that the person will engage

companion cases of *State v. Carpenter,* 197 Wis. 2d 252, 541 N.W.2d 105 (1995), and *State v. Post,* 197 Wis. 2d 279, 541 N.W.2d 115 (1995). In *Carpenter,* the petitioners argued that ch. 980 violated the double jeopardy and ex post facto clauses of the United States and Wisconsin Constitutions. *Carpenter,* 197 Wis. 2d at 258. In *Post,* the petitioners argued that the law violated the due process and equal protection clauses. *Post,* 197 Wis. 2d at 293. This court rejected each of these claims and upheld ch. 980 as constitutional. *Carpenter,* 197 Wis. 2d at 258–59; *Post,* 197 Wis. 2d at 293–94.

¶ 26. In *Carpenter,* the issue at the heart of the petitioner's argument was that ch. 980 was a criminal statute, with double jeopardy and ex post facto implications. *Carpenter,* 197 Wis. 2d at 263, 272. The court concluded that ch. 980 was not a criminal statute. *Id.* at 271–72.

¶ 27. The primary goals and purposes of ch. 980 are to treat sexually violent persons and to protect society from the dangers posed by those persons. *Id.* at 258. Punishment is not among the purposes of ch. 980. *Id.* Specifically, the court held that ch. 980 was enacted as a civil commitment statute "to protect the public and provide concentrated treatment to convicted sexually violent persons." *Id.*

---

in one or more acts of sexual violence. Wisconsin Stat. § 980.01(7) (2007–08) thus defines "sexually violent person" as:

> [A] person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is dangerous because he or she suffers from a mental disorder that makes it *likely* that the person will engage in one or more acts of sexual violence.

*Id.* (emphasis added).

¶ 28. The court concluded that ch. 980's emphasis on treatment was evident in the chapter's plain language. *Id.* at 266. Under then-existing Wis. Stat. § 980.06(1) (1993–94), persons were committed to the DHSS (now DHFS) for "control, care and treatment" rather than to the Department of Corrections for imprisonment. *Id.* at 266. Notice provisions under Wis. Stat. § 980.015(3)(b) (1993–94) required the agency with jurisdiction to provide notice to the Department of Justice and district attorney regarding any past treatment the individual had received in prison. *Id.* Further, then-existing Wis. Stat. § 980.06(2)(b) and (c) required the court to consider available arrangements to ensure access and participation in treatment, and where release was appropriate, required the county where the individual resided to identify a treatment plan for that individual. *Id.* at 266–67.

¶ 29. In addition to this explicit language, the court found other evidence to support ch. 980's goal of treatment, specifically, that the State was prepared to provide specific treatment to committed individuals and "not simply warehouse them." *Id.* at 267. Committed individuals were not part of the general population of inmates. *Id.* Further, committed individuals were monitored by treatment professionals as opposed to prison guards. *Id.* at 267–68. For these reasons, the court concluded:

> [T]he principal purposes of ch. 980 are protection of the public and the treatment of convicted sex offenders who are at a high risk to reoffend in order to reduce the likelihood that they will engage in such conduct in the future. These constitute significant nonpunitive and remedial purposes. Chapter 980 cannot be characterized as only serving the punishment goals of deterrence or retribution.

*Id.* at 271.

¶ 30. Therefore, because ch. 980, as enacted, was a civil statute and not principally punitive, the court held that it did not violate the double jeopardy or ex post facto clauses. *Id.* at 258–59.

¶ 31. Similarly, in *Post,* the court emphasized that treatment for sexually violent persons is a bona fide goal of ch. 980. *Post,* 197 Wis. 2d at 308. Again it pointed to the State's obligation under § 980.06(1) (1993–94) to provide "control, care and treatment" to sexually violent persons as indicia of the chapter's treatment purpose. *Id.* at 309. Furthermore, individuals committed pursuant to ch. 980 were entitled to the same patient rights as persons committed under ch. 51. *Id.* Significantly, the State also was required to conduct "periodic mental examinations" pursuant to Wis. Stat. § 980.07(1) (1993–94) to establish whether sufficient progress had been made to warrant supervised release or discharge. *Id.* at 314.

¶ 32. *Post* also recognized ch. 980's purpose of protecting society from dangerous, sexually violent persons likely to engage in future acts of sexual violence. *Id.* at 313. States have a compelling interest in protecting society by committing those sexually violent persons most likely to engage in sexually violent acts in the future. *Id.* at 294. Such commitment does not violate due process when the commitment's "nature and duration are reasonably related to such compelling state purposes." *Id.*

¶ 33. The court concluded that ch. 980 permissibly balanced individual liberty and "the public's right to be protected from the dangers posed by persons who have already demonstrated their propensity and willingness to commit sexually violent acts." *Id.* at 317. The statute was "narrowly tailored to allow commitment only of the most dangerous of sexual offenders, those

whose mental conditions predispose them to reoffend." *Id.* at 307. Based on these conclusions, the court found that ch. 980 did not violate the petitioner's right to due process. *Id.* at 294. In *Post,* as well as in *Carpenter,* the court held civil commitment pursuant to ch. 980 to be constitutionally permissible.

¶ 34. Wisconsin is not alone in passing civil commitment legislation to deal with sexually violent persons and combat the societal dangers these persons pose. In 1990 Washington became the first state to enact legislation for post-prison civil commitment for sexually violent offenders. Other states—including California, Kansas, Minnesota, New Jersey, and Arizona—have passed similar civil commitment statutes for sexually violent individuals.[8]

¶ 35. In 1997 the United States Supreme Court addressed the constitutionality of these civil commitment statutes in *Kansas v. Hendricks,* 521 U.S. 346 (1997). In *Hendricks,* the petitioner argued that Kansas's civil commitment statute violated the constitutional guarantees of the due process, double jeopardy, and ex post facto clauses. *Id.* at 350. The Court rejected his challenge on all grounds. *Id.* at 371.

¶ 36. Kansas's "Sexually Violent Predator Act" became law in 1994 and established procedures for involuntary civil commitment of individuals who, due to "mental abnormality" or "personality disorder," were found likely to engage in "predatory acts of sexual violence." *Id.* at 350 (citing Kan. Stat. Ann. § 59–29a01 (1994)). The act was intended to address the problem of

---

[8] *See* Cal. Welf. & Inst. Code § 6600 et seq. (West 2011); Kan. Stat. Ann. § 59–29a01 (Supp. 2010); Minn. Stat. ch. 253B (2010); N. J. Stat. Ann. § 30.4–27.24 (West 2010); Ariz. Rev. Stat. Ann. § 36–3701 et seq. (2010).

repeat sexual offenders.[9] *Id.* at 350. The act defined "sexually violent predator" as "any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence." *Id.* at 352 (citing Kan. Stat. § 59–29a02(a) (1994)).

¶ 37. In reasoning similar to this court's analysis in *Carpenter* and *Post,* the Supreme Court found the Kansas civil commitment statute to be civil, not criminal, and ultimately constitutional. *Id.* at 368–69. Determining whether a statute is civil or criminal "is first of all a question of statutory construction." *Id.* at 361 (quoting *Allen v. Illinois,* 478 U.S. 364, 368 (1986)). Although being labeled a civil statute is not always dispositive, the Supreme Court stated that it "will reject the legislature's

---

[9] The Supreme Court acknowledged that this intent was set forth in the Kansas act's preamble, which provided:

[A] small but extremely dangerous group of sexually violent predators exist who do not have a mental disease or defect that renders them appropriate for involuntary treatment pursuant to the [general involuntary civil commitment statute] . . . . In contrast to persons appropriate for civil commitment under the [general involuntary civil commitment statute], sexually violent predators generally have anti-social personality features which are unamenable to existing mental illness treatment modalities and those features render them likely to engage in sexually violent behavior. The legislature further finds that sexually violent predators' likelihood of engaging in repeat acts of predatory violence is high. The existing involuntary commitment procedure . . . is inadequate to address the risk these sexually violent predators pose to society. The legislature further finds that the prognosis for rehabilitating sexually violent predators in a prison setting is poor, the treatment needs of this population are very long term and the treatment modalities for this population are very different than the traditional treatment modalities for people appropriate for commitment under the [general involuntary civil commitment statute].

Kan. Stat. Ann. 59–29a01 (1994).

manifest intent only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme is so punitive either in purpose or effect so as to negate [the State's] intention' to deem it 'civil'." *Id.* at 361 (quoting *United States v. Ward*, 448 U.S. 242, 248–49 (1980)).

¶ 38. The *Hendricks* Court went on to note that the act's placement within Kansas's probate code and its description as a "civil commitment" statute indicated that the act was civil in nature, not criminal. *Id.* at 361. Starting with the plain language of the act, "[n]othing on the face of the statute suggests that the legislature sought to create anything other than a civil commitment scheme designed to protect the public from harm." *Id.*

¶ 39. Furthermore, the Supreme Court held that the statute was not intended to address the criminal purposes of retribution or deterrence. *Id.* at 361–62. First, the statute was not retributive, as introduction of past sexually violent acts as evidence at a civil commitment hearing was not meant to punish the individual for past acts but rather was meant to show the existence of a mental condition. *Id.* at 362.

¶ 40. Second, the statute was not meant to serve as a deterrent because the very purpose of the act was to treat those with uncontrollable urges. *Id.* at 362–63. The mere existence of the act could not be said to deter sexually violent persons from acting upon uncontrollable urges. *Id.* The Court further reasoned that, under the Kansas law, committed individuals did not experience "the more restrictive conditions placed on state prisoners, but instead [experience] essentially the same conditions as any involuntary committed patient in a state mental institution." *Id.* at 363. Therefore, the Court did not believe the statute to be so punitive in purpose or

effect as to negate the state's intention for it to be a civil statute. *Id.* at 368–69.

¶ 41. In upholding Kansas's system for civil commitment, the Supreme Court did not find involuntary commitment to be "contrary to our understanding of ordered liberty." *Id.* at 357. While the Court acknowledged that freedom from physical restraint is at the core of liberty protected, that liberty is not absolute. *Id.* at 356. States may adopt civil commitment statutes that "have coupled proof of dangerousness with the proof of some other factor, such as 'mental illness' or 'mental abnormality' " without running afoul of the Constitution. *Id.* at 358. Notably, the Court upheld the Kansas act *despite its failure to contain any supervised release provision.* The Court's decision in *Hendricks* provides the backdrop against which state courts measure the constitutionality of their own civil commitment statutory schemes.

¶ 42. Since ch. 980's enactment, the Wisconsin Legislature has amended the civil commitment statute on various occasions in furtherance of its goal of protecting the public. Several of these amendments have dealt with the supervised release provisions under Wis. Stat. § 980.08 and the physical commitment provisions under Wis. Stat. § 980.06. In particular, these amendments have served to limit the ability of a person committed pursuant to ch. 980 to obtain supervised release.

¶ 43. For example, in 1999,[10] the legislature amended § 980.06 to require that "[a] commitment order under [§ 980.06] shall specify that the person be

---

[10] This amendment was enacted pursuant to 1999 Wis. Act 9, § 3223h. The amendment also repealed Wis. Stat. § 980.06(2)(a)-(c), which permitted the court to enter an initial order for the sexually violent person to be committed to supervised release as opposed to institutional care.

placed in institutional care." As originally enacted, ch. 980 did not require institutional care upon a determination that an individual was a "sexually violent person." Instead, the individual could be initially committed to supervised release. With this amendment to § 980.06, institutionalized care became a requirement at the outset of commitment.

¶ 44. Next, in 2003,[11] the legislature amended the definition of a "sexually violent person" under § 980.01(7) to require a commitment determination based on a finding that the individual was "likely" to engage in acts of sexual violence. The amendment defined "likely" as "more likely than not." Wis. Stat. § 980.01(1m). This language replaced the original definition that a "sexually violent person" was one who was "substantially probable" to engage in acts of sexual violence. Thus, this 2003 amendment altered—and arguably lowered—the definition of a "sexually violent" person.

¶ 45. Most recently, in 2005,[12] the legislature limited the frequency with which committed individuals could request supervised release. When originally enacted, Wis. Stat. § 980.08(1) allowed a committed individual to petition for supervised release every six months. The 2005 amendment required committed individuals to wait at least twelve months before filing another petition for supervised release.[13] This modification decreased the initial mandatory period of com-

[11] This amendment was enacted pursuant to 2003 Wis. Act 187, §§ 1, 2.

[12] This amendment was made pursuant to 2005 Wis. Act 434, § 113. 2005 Wis. Act 434 is the same legislation that created Wis. Stat. § 980.08(4)(cg).

[13] Prior to the amendment, Wis. Stat. § 980.08 read in pertinent part: "Any person who is committed under s. 980.06

mitment before an individual could petition for supervised release, but extended the waiting period between petitions.

¶ 46. These amendments are examples of the changes the legislature has made to ch. 980 since its enactment in 1993. As the legislature has amended ch. 980, the courts have been asked to determine the constitutionality of such amendments. For example, in 2002, this court reviewed another constitutional challenge to ch. 980 in *State v. Rachel (Rachel I)*, 2002 WI 81, 254 Wis. 2d 215, 647 N.W.2d 762.

¶ 47. *Rachel I* involved a challenge to the provisions governing the petitioner's ability to seek supervised release. Specifically, the petitioner argued that amendments to ch. 980 limited his chances of supervised release. *Id.*, ¶ 7. The court found that merely imposing limitations on a committed individual's access to supervised release did not impose a sufficient restraint on his liberty interests to violate due process. *Id.*, ¶ 66. Relying on our holdings in *Carpenter* and *Post,* the court held that amended ch. 980 still served compelling state interests in providing treatment to sexually violent persons and protecting society from the dangers posed by these individuals. *Id.*, ¶ 68. There-

may petition [for supervised release] if at least *18* months have elapsed since the initial commitment order was entered or at least *6* months have elapsed since the most recent release petition was denied or the most recent order for supervised release was revoked." (Emphasis added.) As amended, § 980.08 reads: "Any person who is committed under s. 980.06 may petition [for supervised release] if at least *12* months have elapsed since the initial commitment order was entered or at least *12* months have elapsed since the most recent release petition was denied or the most recent order for supervised release was revoked." (Emphasis added.)

fore, the amended supervised release provisions still permissibly balanced the public interest in safety and the individual liberty of the committed, sexually violent person. *Id.*

¶ 48. It is against this historical backdrop that we review West's challenge to the placement of the burden of proof for supervised release under Wis. Stat. § 980.08(4)(cg).

B. Burden Of Proof Under Wis. Stat. § 980.08(4)(cg)

¶ 49. An individual committed under ch. 980 may petition for discharge or supervised release. The provision governing supervised release *previously* read:

> (1) Any person who is committed under s. 980.06 may petition the committing court to modify its order by authorizing supervised release . . . . The director of the facility at which the person is placed may file a petition under this subsection on the person's behalf at any time.
>
> . . . .
>
> (4)(b) The court shall grant the petition unless the state proves by clear and convincing evidence one of the following:
>
> 1. That it is likely that the person will engage in acts of sexual violence if the person is not continued in institutional care.
>
> 2. That the person has not demonstrated significant progress in his or her treatment or the person has refused treatment.

Wis. Stat. § 980.08(4)(b) (2003–04).

601

¶ 50. In 2005 the Wisconsin Legislature repealed this provision,[14] and enacted the following provision in its stead:

The court may not authorize supervised release unless, based on all of the reports, trial records, and evidence presented, the court finds that *all of the following criteria are met:*

1. The person has made significant progress in treatment and the person's progress can be sustained while on supervised release.

2. It is substantially probable that the person will not engage in an act of sexual violence while on supervised release.

3. Treatment that meets the person's needs and a qualified provider of the treatment are reasonably available.

4. The person can be reasonably expected to comply with his or her treatment requirements and with all of his or her conditions or rules of supervised release that are imposed by the court or by the department.

5. A reasonable level of resources can provide for the level of residential placement, supervision, and ongoing treatment needs that are required for the safe management of the person while on supervised release.

Wis. Stat. § 980.08(4)(cg) (emphasis added).[15]

¶ 51. The issue presented is whether the amendment to Wis. Stat. § 980.08(4) has changed the burden of proof in a supervised release petition, and if so, to whom has it been shifted and how?

¶ 52. The parties agree that under prior § 980.08(4)(b) the burden of proof was borne by the

---

[14] 2005 Wis. Act 434, § 116.

[15] 2005 Wis. Act 434, § 118.

State. The plain language of the statute instructed the committing court: "The court *shall grant* the petition *unless the state proves* by clear and convincing evidence" one of two factors showing that the committed individual was not statutorily entitled to release. *Id.* The parties also agree that § 980.08(4)(cg) no longer contains language that explicitly assigns the burden.[16]

¶ 53. When interpreting the meaning of a statute, we begin with the language of the statute, and give it its common, ordinary, and accepted meaning. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. When that meaning is plain, courts will look no further. *Id.* We interpret statutory language in context—that is, in relation to surrounding or other closely related statutes and reasonably, to avoid absurd or unreasonable results. *Id.*, ¶ 46.

¶ 54. If the meaning of a statute is ambiguous, however, after considering all intrinsic sources, we look to extrinsic sources such as legislative history to find legislative intent. *Id.*, ¶ 50. A statute is ambiguous if the statutory language gives rise to more than one reasonable meaning. *Teschendorf v. State Farm Ins. Co.*, 2006 WI 89, ¶ 19, 293 Wis. 2d 123, 717 N.W.2d 258 (internal citations and quotations omitted). The fact that the parties advance different interpretations of a statute does not, alone, make the statute ambiguous.

---

[16] In fact, both parties in their briefs characterized Wis. Stat. § 980.08(4)(cg) as ambiguous, differing, of course, on the proper interpretation of its alleged ambiguity. As we explain *infra,* we are not bound by their characterizations, and we conclude that the statute is unambiguous.

*Id.* Furthermore, if absurd consequences would follow a plausible plain reading of a statute, that interpretation may be unreasonable. *Id.*, ¶ 21 n.9.

¶ 55. We hold that the plain language of amended § 980.08(4)(cg) is unambiguous and clearly assigns the burden of producing probative evidence to the committed individual.[17]

¶ 56. The section as amended begins by setting forth a presumption: "The court *may not authorize* supervised release *unless* . . . the court finds . . . ." *Id.* Unlike prior § 980.08(4)(b), which stated that a "court *shall grant* the petition *unless* the state proves," the court now begins from the default position of denying the petition, unless and until certain factors are established.

¶ 57. Prior § 980.08(4)(b) made it clear that it was the State that had to overcome the presumption that a petition would be granted. By contrast, amended § 980.08(4)(cg) sets forth a presumption that supervised release may not be authorized unless, considering all the evidence, "the court finds that *all* of the following criteria are met." (Emphasis added.)

¶ 58. While this statement does not explicitly address who must meet these criteria, or produce evidence for the court, the list of criteria required for a grant of

---

[17] The term "burden of proof" encompasses two aspects: "the burden of producing some probative evidence on a particular issue," and the burden of persuading the fact-finder regarding that issue. *State v. Velez,* 224 Wis. 2d 1, 15–16, 589 N.W.2d 9 (1999) (internal citations omitted). We conclude that the committed individual bears both burdens. In order for a court to grant a petition for supervised release under the statute, the committed individual must produce evidence on all five statutory criteria, and must also prove those criteria to the court.

supervised release makes the assignment of the "burden of proof" unmistakable. The list of criteria reads:

> 1. The person has made significant progress in treatment and the person's progress can be sustained while on supervised release.

> 2. It is substantially probable that the person will not engage in an act of sexual violence while on supervised release.

> 3. Treatment . . . and a qualified provider of the treatment are reasonably available.

> 4. The person can be reasonably expected to comply with his or her treatment requirements and with all . . . conditions or rules of supervised release . . . imposed by the court or by the department.

> 5. A reasonable level of resources can provide for the level of residential placement, supervision, and ongoing treatment needs . . . required for the safe management of the person.

Wis. Stat. § 980.08(4)(cg).

¶ 59. All five criteria are stated in the affirmative. All five criteria are statutory prerequisites to supervised release, and must be supported by evidence before the court. Most important, all five criteria weigh in favor of release, and are therefore in the committed petitioner's best interests to prove. A plain reading of the statute's presumption, coupled with these five criteria, unambiguously assigns the burden of proof (that is, the burden of producing the requisite evidence) to the committed individual seeking supervised release.

¶ 60. West argues that, because the language of prior § 980.08(4)(b) so clearly and unequivocally assigned the burden of proof to the State, the absence of equally explicit language in amended § 980.08(4)(cg)

undermines the idea that the legislature intended to make a change. We disagree.

■

¶ 61. As a general rule, the burden of proof lies with the petitioning party. *See State v. McFarren,* 62 Wis. 2d 492, 499, 215 N.W.2d 459 (1974); *Rachel II,* 324 Wis. 2d 465, ¶ 13; *Sterlingworth Condo. Ass'n v. DNR,* 205 Wis. 2d 710, 726, 556 N.W.2d 791 (Ct. App. 1996). The legislature is presumed to know the law, and to know the legal effect of its actions. *Schill v. Wis. Rapids Sch. Dist.,* 2010 WI 86, ¶ 103, 327 Wis. 2d 572, 786 N.W.2d 177. We agree with the court of appeals' conclusion in *Rachel II:* "The legislature's creation of a presumption in favor of continued commitment together with the affirmative criteria required to rebut that presumption signal the legislature's intent to reallocate the burden of proof." *Rachel II,* 324 Wis. 2d 465, ¶ 16.

¶ 62. Moreover, to read amended § 980.08(4)(cg) as allocating the burden of proof to the State would require the State to prove the negative of all five factors. To do so, each of the five criteria would have to be construed in some manner inconsistent with the plain language of the statute. For example, the State would be required to show that the committed individual has *not* made significant progress in treatment, that the committed individual can *not* be reasonably expected to comply with treatment requirements, and that it is substantially probable that the committed individual *will* reoffend while on release. *See* Wis. Stat. § 980.08(4)(cg)1.-5. Such a construction does violence to the plain language of the statute.

¶ 63. The court's holding in *McFarren* in 1974 lays the groundwork for our holding here. In *McFarren,* this court set forth a five-factor test for courts to apply in allocating the burden of proof. These factors were

adopted, as modified, from *McCormick on Evidence.* *McFarren,* 62 Wis. 2d at 499–500 (citing *McCormick on Evidence* § 337 (2d ed. 1972). These factors are:

> (1) the natural tendency to place the burdens on the party desiring change;
>
> (2) special policy considerations such as those disfavoring certain defenses;
>
> (3) convenience;
>
> (4) fairness; and
>
> (5) the judicial estimate of probabilities.

*Id.* at 499–503.

¶ 64. Both West and the State rely on this test to support their respective positions. We consider each factor in turn.

¶ 65. First, as has already been discussed, the general rule in the law is that the moving party who seeks a change in the status quo is the one who bears the burden of proof. It is the committed individual— here, West—who seeks a change from secure institutional placement to placement in community based supervised release.[18] This factor, therefore, favors placing the burden on West.

¶ 66. The second factor encompasses special policy considerations, such as those disfavoring certain defenses. West argues that the liberty interests at stake are

---

[18] West argues that this general rule should not apply because of the special constitutional interests at stake where deprivation of liberty is involved. He does not provide case law or support for an exception to this general rule where liberty interests are at stake; accordingly, we reserve our review of the constitutional arguments for the following section.

special policy considerations weighing in favor of assigning the burden of proof to the State. This argument would have significantly more weight in the context of an initial commitment proceeding; in this case, however, the committed individual's liberty interests have already been lawfully and constitutionally restricted. Furthermore, the safety of the public is a significant policy consideration that also must be taken into account when discussing the possibility of releasing a dangerous, sexually violent person back into the community. To the extent this factor is applicable, we find that the policy considerations are equally persuasive.

¶ 67. The third and fourth factors consider convenience and fairness. In discussing convenience, the *McFarren* court explained: "[W]here the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue." *McFarren*, 62 Wis. 2d at 500 (quoting *McCormick on Evidence* § 337). West argues that the information needed to prove the five criteria in § 980.08(4)(cg) lies within the control and knowledge of the State, and, therefore, it would be inconvenient to assign him the burden of proof. Specifically, he contends that the information necessary to prove the fifth criterion required for the grant of supervised release—that resources are "reasonably available" for placement, supervision, and treatment on supervised release—is unavailable to the committed individual.

¶ 68. West's brief goes so far as to suggest that this information "is not only in the hands of the state" but is information "which the state easily manipulates." He concedes, as he must, that the DHFS is separate from the prosecutors who oppose supervised release in the petition hearings, but argues that "the practical reality is that the department will cooperate with the prosecutors

608

far more readily than with its involuntarily-committed patients." West does not cite any authority or evidence in support of this assertion, and we reject the allegation that the DHFS would manipulate data or fail to cooperate with a committed individual.

¶ 69. As the State pointed out in oral argument, it is not uncommon for the DHFS and the prosecutor to have different positions on a petition for supervised release, and in those cases, the DHFS may be represented by its own counsel, separate from the State. Moreover, West is statutorily entitled to an independent expert if the DHFS does not support supervised release in his annual review. Wis. Stat. § 980.07(1). He also is entitled to access to his treatment records. The information necessary to prove the five criteria in § 980.08(4)(cg) is not so unavailable to the committed individual as to make the factors of convenience and fairness weigh against the plain language of the statute.

¶ 70. Significantly, West ignores the remainder of the language quoted in *McFarren* regarding convenience: "This consideration should not be overemphasized. Very often one must plead and prove matters as to which his adversary has superior access to the proof." *Id.* While we reject West's characterization of this information as being within the sole control of the State, even to the extent that the State has better access to this information, that would not be determinative of the allocation of the burden of proof.

¶ 71. Finally, the fifth factor involves a judicial assessment of the probabilities. The *McFarren* court observed, "The risk of failure may be placed upon the party who contends that the more unusual event has occurred." *Id.* at 503. There is no question that the committed individual is the party contending that an "unusual" event has occurred—namely, that the indi-

vidual, who was properly committed under ch. 980, may now be placed in the community on supervised release without a probability of committing another sexually violent offense.

¶ 72. It is relevant, at this point, to reiterate the requirements for an individual to be committed as sexually violent under ch. 980. At the time West was committed, the statutes provided that a person may be committed only after a court or jury determines that he or she is

> a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

Wis. Stat. § 980.01(7) (1995–96).

¶ 73. To carry its burden of proof, the State had to put forth evidence to satisfy this definition beyond a reasonable doubt. Wis. Stat. § 980.05(3)(a) (1995–96). West enjoyed all constitutional rights available in a criminal proceeding, including the right to counsel, and all rules of evidence in criminal actions applied. Wis. Stat. § 980.05(1m) (1995–96). In light of the fact that the State successfully carried this significant burden of proof, it is clear that West's position advocates the less likely event—that, after almost two decades of sexual assaults, involving at least 25 women, West has made such significant progress in treatment that he will not engage in an act of sexual violence if placed on supervised release. We accordingly conclude that this fifth

factor weighs strongly in favor of placing the burden of proof with the committed individual.[19]

---

[19] West also argues that Wis. Stat. § 980.08(4)(cg) may be properly interpreted as relieving any party from bearing the burden of proof. He suggests that the list of criteria contained in the statute could be viewed as merely factors for the circuit court to weigh in making its determination whether to grant a petition for supervised release. For example, in a sentencing hearing the circuit court judge is required to make a discretionary decision on the basis of statutory factors. *See State v. Taylor*, 2006 WI 22, ¶¶ 19–20, 289 Wis. 2d 34, 710 N.W.2d 466. Similarly, at the dispositional phase of a termination of parental rights proceeding, a circuit court judge makes a discretionary decision based on the best interests of the child. *See* Wis. Stat. § 48.426(2). West argues that, under a reasonable reading of the plain language of Wis. Stat. § 980.08(4)(cg), the circuit court considering a petition for supervised release should similarly make a discretionary decision after considering all the evidence.

The court of appeals considered this same argument in *Rachel II*. There, the court found it significant that, unlike a petition for supervised release, a sentencing court has broad discretion in applying the statutory criteria, but is not given a statutory presumption. *Rachel II*, 2010 WI App 60, ¶¶ 10–11, 324 Wis. 2d 465, 782 N.W.2d 443. Likewise, in a termination of parental rights proceeding, there is no presumption of any particular custody arrangement; the court's discretion is guided only by the best interests of the child. *Id.*, ¶ 11.

We agree with the analysis of the court of appeals in *Rachel II*. As has already been discussed, the statute begins with the words: "The court *may not* authorize supervised release *unless*" the enumerated criteria are met. Wis. Stat. § 980.08(4)(cg). To accept West's argument would require us to ignore the plain language of the statute, which explicitly establishes a presumption of denying the petition in the absence of proof of entitlement to supervised release. Without a burden of proof, neither the committed individual nor the State would be required to bring forth any evidence for or against supervised release. If neither party introduced any evidence as to why release was warranted under the statute, the court would have to deny the

¶ 74. As noted above, the term "burden of proof" encompasses two aspects: "the burden of producing some probative evidence on a particular issue," and the burden of persuading the fact-finder regarding that issue. *State v. Velez*, 224 Wis. 2d 1, 15–16, 589 N.W.2d 9 (1999) (internal citations omitted). We conclude that the committed individual bears both burdens. For a court to grant a petition for supervised release under the statute, the committed individual must produce evidence on all five statutory criteria and also prove those criteria to the court.

¶ 75. While we conclude that amended § 980.08(4)(cg) unambiguously assigns the burden of proof to the committed individual in a petition for supervised release, the question remains: What level of persuasion is required for West to carry this burden?[20] Because the plain language of the statute does not address this question, we conclude that this aspect of the statute is ambiguous.

¶ 76. We have previously identified two different burdens of proof that apply in civil actions: "fair preponderance of the evidence" and "clear and convincing evidence." *State v. Walberg*, 109 Wis. 2d 96, 102, 325 N.W.2d 687 (1982).

petition. It logically follows, therefore, that one party must bring forth evidence to persuade the court to grant release. For the same reasons that the plain language of the statute leads to a conclusion that the burden properly lies with the committed individual, not the State, we reject the argument that the statute removes the burden from either party.

[20] Under prior Wis. Stat. § 980.08(4)(b), the State was required to prove by clear and convincing evidence that a petitioner was *not* entitled to supervised release. *State v. Brown*, 2005 WI 29, ¶¶ 11–12, 279 Wis. 2d 102, 693 N.W.2d 715.

> The fair preponderance standard applies in ordinary civil actions. The clear and convincing standard applies in cases where public policy requires a higher standard of proof than in the ordinary civil action. This so-called middle burden of proof has been required in such cases as fraud, undue influence, and prosecutions of civil ordinance violations which are also crimes under state law.

*Id.* (citations omitted).

¶ 77. The court of appeals considered which burden should apply in *Rachel II*, and concluded that, under amended § 980.08(4)(cg), the petitioner must prove by clear and convincing evidence that supervised release is appropriate. *Rachel II*, 324 Wis. 2d 465, ¶ 18. The court of appeals correctly observed that, in the absence of statutory language to the contrary, preponderance of the evidence might be the appropriate burden, unless public policy considerations demand otherwise. *Id.* The court of appeals concluded that such public policy concerns require the higher standard of clear and convincing evidence, and we agree. *Id.*

¶ 78. In *Carpenter,* we acknowledged the legitimate public safety concerns involved in placing a sexual offender in the community. We concluded that the primary purposes of "protection of the public and the treatment of convicted sex offenders who are at a high risk to reoffend . . . constitute significant nonpunitive and remedial purposes." *Carpenter,* 197 Wis. 2d at 271. In the specific context of supervised release, we have further held that the need to return a person to a secure facility in the interests of public safety outweigh the person's interests in alternatives to having their supervised release revoked. *Burris,* 273 Wis. 2d 294, ¶ 30.

¶ 79. This prevailing concern for the safety of the public also is evident in amended § 980.08(4)(cg)2.,

which requires a showing that it is "substantially probable that the person will not engage in an act of sexual violence while on supervised release." We have interpreted "substantially probable" to mean "much more likely than not." *Brown,* 279 Wis. 2d 102, ¶ 11 (citing *State v. Curiel,* 227 Wis. 2d 389, 395, 597 N.W.2d 697 (1999)).

¶ 80. A civil commitment under ch. 980 should not and, due to the statutory protections, cannot be undertaken lightly. Nevertheless, the release of a person who has been determined to be sexually violent into the community where he or she may commit further acts of sexual violence is an equally serious undertaking. The concerns for the public safety that justify restricting the individual's liberty in the initial commitment are perhaps even more strongly implicated in the decision to release the individual back into the community, because the initial determination involves a finding that the individual is likely to reoffend. Proof by a preponderance of the evidence would require a mere showing that it is more likely than not that West would not commit another act of sexual violence. Where the likelihood we are weighing is whether another individual would be more or less likely to be a victim of an act of sexual violence, we are unwilling to set the standard so low.

¶ 81. Consequently, we conclude that, in the absence of a statutory directive to the contrary, it is appropriate to require the committed individual to bear the burden of proof by clear and convincing evidence that he or she is entitled to supervised release.

## C. West's Constitutional Challenges

¶ 82. West contends that allocating the burden of proof to the committed individual, as we have deter-

mined Wis. Stat. § 908.08(4)(cg) does, violates the due process and equal protection guarantees under the Constitution. We examine each argument in turn.

## 1. Due Process

¶ 83. Under a procedural due process analysis, we must determine first whether there exists a liberty interest of which the individual has been deprived, and if so, whether the procedures used to deprive that liberty interest were constitutionally sufficient. *Kentucky Dep't. of Corr. v. Thompson,* 490 U.S. 454, 460 (1989). A protectable liberty interest requires more than an individual's desire or unilateral expectation; rather, the individual must have "a legitimate claim of entitlement to it." *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex,* 442 U.S. 1, 7 (1979) (citing *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972)).

¶ 84. The State argues that West's liberty interest is analogous to that of a criminal parolee and thus the procedures provided for supervised release do not violate procedural due process. In *Greenholtz,* the United States Supreme Court found no due process violation in Nebraska's parole system. *Greenholtz,* 442 U.S. at 16. In its reasoning the Court held that a convicted person does not have a constitutional or inherent right to be conditionally released before the expiration of a valid sentence. *Id.* at 7. Furthermore, a state had no duty to establish a parole system in the first place. *Id.* Where the state held out the possibility of parole, this possibility was merely a hope that the benefit might be obtained and was not an entitlement. *Id.* at 11. In the case of parole, the procedural safeguards inherent in

the original conviction served to constitutionally extinguish the individual's liberty right. *Id.* at 7.

¶ 85. We find the comparison of supervised release to parole procedure instructive in this case. While West might have a liberty interest in freedom from physical restraint, this right is not absolute, and was constitutionally limited when he was determined to be a sexually violent person under ch. 980. As was discussed *supra,* that initial determination required the State to carry the burden of proof beyond a reasonable doubt. Wis. Stat. § 980.05(3)(a). Once that burden was satisfied, the circuit court had a statutory obligation to confine West until he is no longer determined to be a sexually violent person. Wis. Stat. § 980.06. Just as the State does not have a duty to offer parole, the State has no duty to offer supervised release. *See Hendricks,* 521 U.S. 346 (affirming what might be an indefinite commitment despite the absence of supervised release provisions).

¶ 86. Further, the original determination of being a sexually violent person, like a conviction before parole, carries procedural safeguards that serve to protect the individual's due process rights. *See* Wis. Stat. § 980.03. Where the legislature is able to establish conditions necessary for parole, it similarly should be able to set conditions for supervised release. That these conditions must then be satisfied by the committed individual does not change our analysis, especially as he is provided significant rights in a supervised release petition under ch. 980, including the right to an attorney and the right to discovery of physical and mental reexaminations, examiners, and witnesses. *See* Wis. Stat. §§ 980.036, 980.07, 980.08.

¶ 87. We note that there is a marked difference between a petition for supervised release and a petition for discharge under Wis. Stat. § 980.09. Once a dis-

charge petition establishes through pleading and supportive evidence that "facts exist from which a court or jury could conclude the person does not meet criteria for commitment," the matter is set for a hearing at which the State has the burden of proving by clear and convincing evidence that the person still meets the criteria for commitment as a sexually violent person.

¶ 88. A petition for supervised release more or less concedes that the petitioner would not expect to prevail on a petition for discharge, *where the State had the burden of proof.* If a petitioner is not ready to be discharged, he has the burden of showing that he should nonetheless be placed on supervised release in the community.

¶ 89. West does not have a recognized, protectable liberty interest in supervised release; accordingly, to require him to bear the burden of proof in his petition does not violate due process.

## 2. Equal Protection

¶ 90. To prove an equal protection clause violation, the party challenging a statute's constitutionality must show that "the state unconstitutionally treats members of similarly situated classes differently." *Post,* 197 Wis. 2d at 318. The right to equal protection does not require that such similarly situated classes be treated identically, but rather requires that the distinction made in treatment have some relevance to the purpose for which classification of the classes is made. *Id.* at 321 (citing *Baxtrom v. Herold,* 383 U.S. 107, 111 (1966)).

¶ 91. In analyzing civil commitment statutes, this court has acknowledged that persons confined under ch. 980 are similarly situated to those confined under

ch. 51. *Id.* at 318–19. Additionally, courts have assumed, without deciding, that individuals confined under ch. 980 are similarly situated to those under § 971.17. *See State v. Williams,* 2001 WI App 263, ¶ 10, 249 Wis. 2d 1, 637 N.W.2d 791. While the level of scrutiny used in analyzing whether statutes depriving liberty interests violate equal protection is unclear, *Id.,* ¶ 11, this court has applied, without deciding, strict scrutiny in ch. 980 equal protection challenges, *Post,* 197 Wis. 2d at 321.

¶ 92. Our decision in *Post* is instructive to West's challenge. In *Post,* the defendants challenged the validity of ch. 980 on equal protection grounds, arguing that individuals involuntarily committed under ch. 51 for mental illness were treated differently. *Id.* at 317–18. While the parties and the court agreed in finding individuals under ch. 51 and ch. 980 similarly situated, the court held that the statutorily distinctive mechanisms for dealing with the two classes was proper in light of the difference between the classifications. *Id.* at 319, 325–30. The different procedures under the respective chapters reflect the relative dangerousness of each classification, and the State's corresponding compelling interest to protect the public from each group. *Id.* at 329–30.

¶ 93. Similarly, in *Williams,* the court of appeals held that persons committed under ch. 980, as a class, present more of a danger to public safety than those committed under ch. 51. *Williams,* 249 Wis. 2d 1, ¶ 13. Because of this difference in the relative level of danger posed to public safety, the court concluded that different procedures were warranted. *Id.,* ¶ 16.

¶ 94. The court in *Williams* also found significant that it is more difficult to commit someone under ch. 980 than under ch. 51. *Id.,* ¶ 14. Due to differences in the degree of dangerousness and in the higher degree of difficulty for obtaining initial confinement, the court

concluded the difference in treatment was warranted and not in violation of the equal protection clause. *Id.*, ¶ 16.

¶ 95. The court of appeals in *Williams* also found differences in the treatment of individuals committed under ch. 980 and Wis. Stat. § 971.17[21] to be permissible. While ch. 980 required the State to prove the individual's mental disorder and dangerousness beyond a reasonable doubt at the time of commitment, § 971.17 only infers current mental illness and dangerousness at the time of commitment. *Id.*, ¶¶ 17–18. This critical distinction reflects the legislature's judgment that sexually violent persons are more dangerous, and accordingly, that a different procedure and confinement duration is warranted. *Id.*, ¶ 18. Because the differences in procedure reflect the distinction in classifications, these differences did not violate the equal protection clause.

¶ 96. In this case, placing the burden of proof for supervised release with West does not violate the equal protection clause when comparing persons committed under ch. 980 with those committed under either ch. 51 or § 971.17. The court has recognized that individuals committed under ch. 980 are similarly situated to individuals committed under ch. 51. *Post,* 197 Wis. 2d at 318–19. Individuals committed under ch. 980 have the burden of proving that supervised release is warranted, while under ch. 51 the State has the burden of proving that continued confinement is necessary. Our reasoning in *Post,* coupled with the court of appeals' reasoning in *Williams,* shows that the difference in treatment is directly related to the distinct purposes of classification

[21] Wis. Stat. § 971.17 provides for the commitment of persons found not guilty by virtue of mental disease or defect.

in chs. 51 and 980. Because procedures between similarly situated classes need not be identical, and the difference in assigning the burden of proof is directly related to the difference in relative danger to public safety, we hold that there is no equal protection violation.

¶ 97. West argues that common goals in treatment of and protection from individuals committed under ch. 980, ch. 51, and § 971.17 makes these classes similarly situated and therefore requires a similar placement of the burden of proof on the State. This argument, however, does not address the fact that, even with similarly situated classes, the State is not required to provide identical treatment to each class and instead need show only that differences in treatment are relevant to the classification distinction.

¶ 98. Even if this court assumes the three classifications in ch. 980, ch. 51, and § 971.17 are similarly situated, as indicated in *Post* and *Williams,* distinctions in classifications exist so as to warrant different procedures. Here, placing the burden of proof on ch. 980 committed individuals to obtain supervised release, but not on those committed under ch. 51 or § 971.17, is permissible due to classification distinctions as to the dangerousness of those confined and does not violate the equal protection clause.[22]

---

[22] The State argues that individuals committed under ch. 980 and Wis. Stat. § 971.17 are not similarly situated, and offers evidence of a difference in that those committed under § 971.17 receive generally finite confinement terms whereas ch. 980 confinement is indefinite. This argument, while plausible, is unnecessary to our analysis. The classification distinction created in terms of proven dangerousness as opposed to inferred dangerousness makes the different procedures—in this case, assignment of the burden of proof—permissible.

¶ 99. In conclusion, placing the burden of proof on the petitioner for supervised release under amended Wis. Stat. § 980.08(4)(cg) does not violate substantive or procedural due process, nor does it violate equal protection.

## IV. CONCLUSION

¶ 100. Chapter 980 seeks to address the dangers presented by persons who have been determined to be sexually violent because of their criminal history and serious mental disorders, without ignoring the interests those persons—and society—have in their treatment and eventual release. We have upheld ch. 980 commitments, and the statutory requirements for supervised release, on the basis of this delicate balancing of the public safety with individual liberty. We find it important to note that if "civil confinement were to become a mechanism for retribution or general deterrence ... our precedents would not suffice to validate it." *Hendricks,* 521 U.S. at 373 (Kennedy, J., concurring).

¶ 101. Under the facts of the instant case, however, we do not perceive any such retributive or deterrent aims. Rather, we perceive a legislative attempt to protect the public from those committed individuals seeking supervised release who still present a substantial danger to the public.

¶ 102. Accordingly, we conclude that amended Wis. Stat. § 980.08(4)(cg) unambiguously places the burden of proof with the committed individual. We determine that the appropriate burden of persuasion is clear and convincing evidence. We further hold that this allocation and burden do not violate the due process and equal protection clauses of the Constitution.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 103. ANN WALSH BRADLEY, J. (*dissenting*). The problems posed by chapter 980 commitments are difficult for both the legislature and the court alike. This case, however, presents a fairly straightforward question of statutory interpretation. Rather than adhering to the statutory text, the majority interprets legislative silence as unambiguous intent to place the burden of persuasion on the committed person. It then exacerbates any constitutional infirmities such an interpretation may create by contending that, based on public policy, the burden on the committed person is clear and convincing evidence.

¶ 104. I agree with the majority that if chapter 980 "were to become a mechanism for retribution or general deterrence[,] our precedents would not suffice to validate it." Majority op., ¶ 101. I conclude that the majority's unnecessary interpretation pushes chapter 980 one step closer to a punitive scheme. Accordingly, I respectfully dissent.

I

¶ 105. As the majority acknowledges, prior to the 2005 amendments to chapter 980, the State had the burden to prove by clear and convincing evidence that supervised release was inappropriate. Majority op., ¶ 52. The 2005 amendments removed the language placing the burden on the State, but did not expressly assign any burden to any party. *Id.*, ¶ 50.

¶ 106. The majority interprets the 2005 amendments to constitute a total reversal of prior law. Despite the legislature's silence on the issue of burden, the majority determines that the legislature unambiguously intended to shift the burden to the committed

622

person to meet all the criteria for supervised release.[1] *Id.*, ¶ 55.

¶ 107. Having concluded that the burden falls on the committed person, the majority takes its analysis one step further. The words "clear and convincing" do not appear within the text of the supervised release provisions of chapter 980. The majority tacitly acknowledges that the normal burden in a civil case is preponderance of the evidence, in the absence of statutory language to the contrary. *Id.*, ¶ 77. Nevertheless, the majority asserts that it is "unwilling to set the standard so low." *Id.*, ¶ 80. It makes the determination that "public policy" compels a conclusion that the burden should be clear and convincing evidence. *Id.*, ¶ 77.

¶ 108. As the majority contends, legislative amendments "have served to limit the ability of a person committed pursuant to ch. 980 to obtain supervised release." *Id.*, ¶ 42. In determining that placing the burden on the committed person does not run afoul of the constitution, the majority appears to rely on the initial determination that the committed person is a sexually violent person. *Id.*, ¶ 86. It also appears to rely on the availability of discharge and the procedural safeguards that attend petitions for discharge under Wis. Stat. § 980.09. *Id.*, ¶ 87. It concludes that super-

---

[1] Under the majority's analysis, the committed person must prove that he has made significant progress in treatment which can be sustained, that it is substantially probable that he will not engage in an act of sexual violence while on supervised release, and that he can be reasonably expected to comply with treatment requirements and conditions and rules of supervised release. Additionally, the committed person must prove that appropriate treatment is reasonably available and that a reasonable level of resources can provide for the required placement, supervision, and treatment needs.

vised release is analogous to parole in criminal cases, and that a committed person has no liberty interest in supervised release. *Id.*, ¶ 85.

## II

¶ 109. I agree with the majority that the legislature unambiguously removed the burden of persuasion from the State. The statute formerly provided that a petition for supervised release would be granted "unless the state proves by clear and convincing evidence" that certain criteria were met. Wis. Stat. § 980.08(4) (1993–94). The legislature removed that language from the statute, evincing an intent to relieve the State of the burden.

¶ 110. I cannot agree, however, that the legislature unambiguously intended to place the burden on the committed person. The majority sets forth several arguments in support of this conclusion, *see* majority op., ¶¶ 56–59, and at first blush, they appear persuasive. Nevertheless, at the end of the day, language placing the burden of persuasion on the committed person is simply absent from the statute.

¶ 111. The legislature routinely assigns burdens, and it does so by including express language. In the former statute, the legislature expressly placed the burden on the State. Likewise, the legislature has affirmatively assigned burdens of proof in the surrounding subsections of chapter 980.[2] It is inconceivable to imagine that the legislature intended to assign the burden of persuasion to the committed person and simply forgot to include language doing so. The majority does what the legislature was unwilling to do—it inserts a burden into the statutory text.

---

[2] Wis. Stat. § 980.05(3)(a); Wis. Stat. § 980.09(3) (2009–10).

¶ 112. The better interpretation is that the statute now provides no affirmative burden of persuasion on either party. Rather, it requires the circuit court to make a discretionary determination based on the statutory criteria and all the available evidence.

¶ 113. The majority rejects this interpretation in a footnote. *See* majority op., ¶ 73 n.20. It advances that the interpretation is not workable because neither party "would be required to bring forth any evidence." *Id.* However, such a scheme is common in other statutes where the circuit court is called upon to balance competing interests. For instance, in the dispositional phase of a termination of parental rights proceeding, the court must consider various statutory criteria and make a determination of what is in the best interest of the child. No party—neither the parent, nor the State, nor the guardian ad litem—is assigned a burden of persuasion.

¶ 114. Not only is this interpretation consistent with the language of the statute, but it also helps protect the statute from constitutional infirmities. Rather than interpreting chapter 980 to protect it from constitutional infirmities, however, the majority interprets legislative silence as unambiguous intent. It further exacerbates the possibility of constitutional infirmities by declaring that "public policy" requires a higher burden than the preponderance of evidence, and it sets the burden at clear and convincing evidence.

¶ 115. Normally, when the level of the burden of persuasion is unspecified, it is the preponderance of evidence. On what statutory language or legislative history does the majority rely to discard the normal standard and set the burden at clear and convincing evidence? None whatsoever. The majority relies instead on its own assessment of what would be good public

policy. It rejects the normal preponderance burden, reasoning: "[W]e are unwilling to set the standard so low." Majority op., ¶ 81.

¶ 116. In setting the burden at clear and convincing evidence, the majority relies on a rationale that is the basis of a criminal conviction. A focus of a chapter 980 commitment is the committed person's current level of dangerousness. This focus sets a chapter 980 commitment apart from a criminal conviction, which focuses on an initial determination of guilt.

¶ 117. Yet, in setting the burden at clear and convincing evidence, the majority relies not on any current assessment of dangerousness, but rather upon the initial finding that, at the time of commitment, the person was more likely than not to reoffend. The majority's reliance on the initial determination rather than a current assessment blurs the distinction between civil and criminal commitments.

## III

¶ 118. The majority's interpretation chips away at the constitutional underpinnings of chapter 980. Chapter 980 was first enacted in 1993. This court addressed various challenges to its constitutionality in 1995. *State v. Carpenter,* 197 Wis. 2d 252, 541 N.W.2d 105 (1995); *State v. Post,* 197 Wis. 2d 279, 541 N.W.2d 115 (1995).

¶ 119. This court's initial pronouncements that chapter 980 was constitutional relied heavily on the then-existing supervised release provisions, which ensured that a committed person was placed in the least restrictive environment necessary to meet therapeutic and public safety needs. These provisions supplied sufficient evidence that the legislature's intent and effect was not to punish or indefinitely incarcerate

sexually violent persons, but rather, to treat them. Such legislative intent and effect was necessary to meet constitutional standards.

¶ 120. I authored the *Carpenter* majority opinion, in which we addressed double jeopardy and ex post facto challenges. We concluded that chapter 980 survived those challenges because the "plain language" of the statute demonstrated the legislature's intent to "create[] a civil commitment procedure primarily intended to protect the public and to provide concentrated treatment to convicted sexually violent person, not to punish the sexual offender." 197 Wis. 2d at 258.

¶ 121. The legislature's non-punitive intent was evinced, in part, by the then-existing supervised release provisions. Sexually violent persons were "committed to the [DHSS] for control, care, and treatment." *Id.* at 259–60. Institutionalization at a secure mental health facility was not automatic. Rather, the DHSS was required to provide placement "in the least restrictive manner consistent with the requirements of the person." *Id.* at 266. Supervised release was available from day one depending on the person's therapeutic needs. We explained: "These provisions lead us to conclude that the statute is aimed primarily at treating the sexually violent person, not punishing the individual." *Id.* at 267.

¶ 122. I joined the majority opinion of this court in *Post.* To survive a due process challenge, we explained, the nature and duration of commitment must "bear some reasonable relation to the purpose for which the individual is committed." 197 Wis. 2d at 313. We concluded that "[t]he language of the statute provides the best evidence of this reasonable relationship." *Id.* The nature of the commitment was "control, care and treatment in the least restrictive manner." *Id.* Further,

627

the duration of institutionalization and commitment were intimately linked to treatment of the mental condition. *Id.* at 314.

¶ 123. Over the last 15 years, the legislature has steadily chipped away at those aspects of chapter 980 upon which we relied in determining that the statute was constitutional. As it now exists, chapter 980 is largely unrecognizable from the scheme that was deemed constitutional in *Carpenter* and *Post:*

- The proof necessary to initially commit an individual has been significantly lowered. When ch. 980 was first enacted, a jury was required to find beyond a reasonable doubt that it was "substantially probable that the person will engage in acts of sexual violence." Wis. Stat. § 980.01(7) (1993–94). Now, the jury must conclude only that it is "likely." Wis. Stat. § 980.01(7) (2009–10).

- The nature of the commitment is significantly more restrictive. When the statute was first enacted, a commitment order could specify "institutional care in a secure mental health unit or facility . . . or other facility or supervised release." Wis. Stat. § 980.06(2)(b) (1993–94). The DHSS was required to place the person in the "least restrictive manner consistent with the requirements of the person." *Id.* Now, this discretion has been removed. A commitment order "shall specify that the person be placed in institutional care," and the DHSS "shall place a person committed under s. 980.06 at the secure mental health facility." Wis. Stat. §§ 980.06, 980.065(1m) (2009–10).

- The duration of institutionalization is necessarily longer. When the statute was first enacted, the DHSS was required to reexamine committed persons "within 6 months after an initial commitment." Wis. Stat. § 980.07(1) (1993–94). Now, the reexamination need not occur until twelve months after initial confinement. Wis. Stat. § 980.07(1) (2009–10).

- When the statute was first enacted, a committed person could petition for supervised release when 6 months had elapsed since the original commitment. Wis. Stat. § 980.08(1) (1993–94). Now, the committed person must be institutionalized for twelve months prior to petitioning for supervised release. Wis. Stat. § 980.08(1) (2009–10).

- As discussed in this opinion, the availability of supervised release has been drastically undermined.

¶ 124. In *State v. Rachel* (*Rachel I*), 2002 WI 81, ¶ 14, 254 Wis. 2d 215, 647 N.W.2d 762, this court evaluated the 1999 amendments to chapter 980, which "[a]s a whole . . . limit[ed] the ch. 980 respondent's ability to obtain supervised release[.]" We concluded that despite these limitations, the statute remained constitutional.

¶ 125. I wrote separately, concurring in the mandate. I concurred because of the presumption that a statute is constitutional and the rule that a statute must be proven unconstitutional beyond a reasonable doubt. *Id.*, ¶ 86 (Bradley, J., concurring). Yet, I concluded that the supervised release provisions, as amended in 1999, were "on the brink of running afoul of the constitution." *Id.*, ¶ 71. Given the many changes in the law since its inception, most of them chipping away at the edges of this court's rationale in *Carpenter* and *Post,* I said that the presumption of constitutionality was "wearing thin." *Id.*, ¶ 75.

¶ 126. With the most recent amendments, as they have been interpreted by the majority, I conclude that the arguments in favor of constitutionality have just about worn out.

¶ 127. In my view, a key component of the original statute's constitutionality is that the burden continually fell on the State to justify the placement of a

629

sexually violent person in the most restrictive environment—institutionalization at a secure mental health facility. As amended in 1999, however, a committed person must be institutionalized at a secure mental health facility upon commitment. Now, under the most recent amendments, the presumptions embodied by the statute appear to favor continued institutionalization.

¶ 128. Not only must the committed person prove that he poses a low risk of danger to others, he also must prove elements that are unrelated to his level of dangerousness. He must prove that placement, supervision, and treatment are "reasonably available" and can be provided with a "reasonable level of resources." As a result, the nature and duration of commitment may no longer be related to the person's legitimate treatment needs and the actual danger they would pose under the conditions of supervised release.

¶ 129. When I examine how this statute has evolved over the last 15 years, I have increasing doubts that the "plain language" of the statute evinces that the legislature's choices are "primarily intended to protect the public and to provide concentrated treatment to convicted sexually violent persons, not to punish the sexual offender." *Carpenter,* 197 Wis. 2d at 258. Rather, chapter 980 increasingly resembles a punitive scheme.[3]

---

[3] I agree with the majority that the procedural safeguards attending initial commitment proceedings as well as the availability of discharge and the procedural safeguards that attend discharge proceedings are essential aspects of maintaining chapter 980's constitutionality. Without these safeguards, a committed person could be indefinitely institutionalized even if he no longer met the criteria for commitment as a sexually violent person. Such a scheme would surely run afoul of numerous constitutional provisions. *Foucha v. Louisiana,* 504 U.S. 71, 82 (1992).

¶ 130. This shifting focus away from treatment and toward punishment is reflected in the majority's analysis. To justify what it perceives to be the legislature's choice, the majority relies more and more on the procedural safeguards that attended the initial commitment and the fact that a jury once found that the committed person was a sexually violent person.

¶ 131. The majority explains that "the original determination of being a sexually violent person, like a conviction before parole, carries procedural safeguards that serve to protect the individual's due process rights." Majority op., ¶ 86. It further contends that it is "unusual" that a person "who was properly committed under ch. 980, may now be placed in the community on supervised release without a probability of committing another sexually violent offense." Majority op., ¶ 71, *see also id.*, ¶ 73.

¶ 132. These justifications resonate with a criminal commitment scheme, in which an accused defendant is afforded procedural safeguards at trial, and the finality of judgment carries great weight after conviction. They do not belong in a civil commitment scheme, where the nature and duration of commitment are

---

The majority relies on *Hendricks* for the stark proposition that a civil commitment statute need not contain any supervised release provision at all to pass constitutional muster. *See* majority op., ¶ 41. I do not find this argument to be persuasive. It overlooks that each civil commitment scheme is its own package and must be evaluated as a whole based on all of its characteristics. *See State v. Rachel (Rachel I)*, 2002 WI 81, ¶ 44, 254 Wis. 2d 215, 647 N.W.2d 762 ("[W]e think it is necessary to look beyond the mere amendments in our analysis to the statute as a whole.") It also overlooks the fact that, as discussed in detail below, this court heavily relied on the supervised release provisions when it first pronounced chapter 980 constitutional.

supposed to be "intimately linked to treatment of [the] mental condition." *Post,* 197 Wis. 2d at 314. The majority makes clear that it considers placement in the community under supervision—which was once a cornerstone of the statute's constitutionality—to be an "unusual event."

¶ 133. Ultimately, the majority's interpretation invites an absurd result contrary to the legitimate purposes of chapter 980. It appears that it may be easier for a person who was once determined to be sexually violent to obtain discharge than supervised release.

¶ 134. When a person is placed on supervised release, he lives in the community but at the same time is strictly monitored by the DHSS. Supervised release often includes stringent conditions.[4] If the person violates any rule or condition, supervised release can be readily revoked. By contrast, when a person is discharged from a chapter 980 commitment, that person is released into the community and free to go about his business with no constraints. There are no conditions or monitoring because he is no longer in the care, custody, and control of the DHSS.

---

[4] *See, e.g.,* Wis. Stat. § 908.08(9)(a) ("As a condition of supervised release . . . , for the first year of supervised release, the court shall restrict the person on supervised release to the person's home except for outings that are under the direct supervision of a department of corrections escort and that are for employment purposes, for religious purposes, or for caring for the person's basic living needs."); *see also* Wis. Admin. Code DHS § 98.07(3); Dep't. Health Services, Conditional Release Rules and Conditions, *available at* www.dhs.wisconsin.gov/forms1/f2/f25614.doc.

The conditions and monitoring placed on a person on supervised release are much more stringent than the conditions and monitoring placed on someone who is on extended supervision after serving a conviction for a criminal offense.

¶ 135. As set forth above, chapter 980 was originally found to be constitutional because it served the legitimate purposes of protection of the public and treatment of sexually violent persons. I conclude that the absurd result countenanced by the majority undercuts both purposes. It favors the release of sexually violent persons into the community without control, and it disfavors the therapy for sexually violent persons that can be best achieved in the community.

¶ 136. Accordingly, I respectfully dissent.

¶ 137. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.